JAMES T. HANNINK (131747)
jhannink@sdlaw.com
ZACH P. DOSTART (255071)
zdostart@sdlaw.com
DOSTART HANNINK & COVENEY LLP
4180 La Jolla Village Drive, Suite 530
La Jolla, California 92037-1474
Tel:  858-623-4200
Fax: 858-623-4299

Attorneys for Plaintiffs


UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA


| | |
|---|---|
| JOHN KERR, EDWARD LI, TIM BARNARD, and KENNETH CURTIS, individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>vs.<br><br>ZACKS INVESTMENT RESEARCH, INC., an Illinois corporation, NATIONAL MARKETING RESOURCES, LLC, a Missouri limited liability company; PARADIGM DIRECT LLC, a Delaware limited liability company; RESPONSE NORTH, LLC, a Utah limited liability company; ZACKS INVESTMENT MANAGEMENT, INC. an Illinois corporation; and DOES 6-50, inclusive,<br><br>   Defendants. | CASE NO. 16-CV-01352 GPC BLM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Date:  October 27, 2017<br>Time:  1:30 p.m.<br>Crtrm.: 2D (2nd Floor - Schwartz)<br>Judge: Hon. Gonzalo P. Curiel |

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION .......................................................................... 1

II.    SUMMARY OF THE TCPA AND THE PRIVACY ACT ............................ 3

    A.    TCPA ................................................................................ 3

    B.    Privacy Act ....................................................................... 3

III.   FACTUAL BACKGROUND .......................................................... 3

    A.    Facts Giving Rise to this Lawsuit .......................................... 3

    B.    The Litigation ................................................................... 4

IV.    KEY SETTLEMENT TERMS ......................................................... 7

    A.    Settlement Class Definitions ................................................ 7

    B.    Monetary Consideration ..................................................... 8

    C.    Appointment of Class Representatives and Class Counsel ........... 8

    D.    Class Notice .................................................................... 9

        1.    Summary Notice to the Response North Classes .............. 9

        2.    Summary Notice to the Zacks Class ............................ 9

        3.    Publication Notice to the Zacks Class ........................ 10

        4.    Long Form Notice .................................................. 10

    G.    Releases ........................................................................ 12

V.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ........... 12

    A.    The Standard for Preliminary Approval ................................ 12

    B.    The Strength of Plaintiffs' Claims and the Risks and Expense of Further Litigation ............................................................. 14

    C.    The Settlement Amount .................................................... 16

    D.    The Extent of Discovery Completed and Stage of the Proceedings ................................................................... 18

    E.    The Experience and Views of Counsel .................................. 18

    F.    The Reaction of the Class to the Settlement .......................... 19

i

VI.    THE COURT SHOULD CONDITIONALLY CERTIFY THE
       CLASSES .............................................................................................. 19

       A.    The Settlement Classes Meet the Requirements of Rule 23(a) ............ 19

             1.    Numerosity.................................................................................. 20

             2.    Commonality ............................................................................... 20

             3.    Typicality .................................................................................... 20

             4.    Adequacy ..................................................................................... 21

       B.    The Settlement Classes Meet the Requirements of Rule 23(b)(3) ....... 21

VII.   THE COURT SHOULD APPROVE THE CLASS NOTICE ........................ 22

VIII.  PLAINTIFFS WILL FILE A NOTICED MOTION REGARDING
       ATTORNEYS' FEES, LITIGATION EXPENSES, AND CLASS
       REPRESENTATIVE SERVICE PAYMENTS .............................................. 25

IX.    CONCLUSION ............................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ades v. Omni Hotels Mgmt. Corp.*,
  2014 U.S. Dist. LEXIS 129689 (C.D. Cal. Sept. 8, 2014) ................................... 15

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ....................................................................................... 21

*Churchill Village, LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ......................................................................... 22

*Connelly v. Hilton Grand Vacations Co., LLC*,
  294 F.R.D. 574 (S.D. Cal. Oct. 29, 2013) ..................................................... 15

*Franklin v. Kaypro Corp.*,
  884 F.2d 1222 (9th Cir. 1989) ....................................................................... 12

*Franklin v. Wells Fargo Bank, N.A.*,
  2016 U.S. Dist. LEXIS 13696 (S.D. Cal. Jan. 29, 2016) ................................. 15

*Gannon v. Network Tel. Servs., Inc.*,
  2013 U.S. Dist. LEXIS 81250 (C.D. Cal. Jun. 5, 2013) ................................... 15

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982) ......................................................................... 12

*Gen. Tel. Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982) ....................................................................................... 20

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................... 13, 20, 22

*Kramer v. Autobytel, Inc.*,
  2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) ............................. 17

*Lagos v. Leland Stanford Junior Univ.*,
  2017 U.S. Dist. LEXIS 23258 (N.D. Cal. Feb. 17, 2017) ................................. 23

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978) ......................................................................... 21

*Linney v. Cellular Alaska P'ship*,
     151 F.3d 1234 (9th Cir. 1998) .............................................................. 13

*Malta v. Fed. Home Loan Mortg. Corp.*,
     2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) ................................ 17, 19

*McDonald v. Bass Pro Outdoor World, LLC*,
     2014 U.S. Dist. LEXIS 109080 (S.D. Cal. Aug. 4, 2014)................................. 19

*Officers for Justice v. Civil Serv. Comm'n*,
     688 F.2d 615 (9th Cir. 1982) .......................................................... 12, 13

*Overton v. Hat World, Inc.*,
     2012 U.S. Dist. LEXIS 144116 (E.D. Cal. Oct. 4, 2012) ................................. 23

*Quesada v. Bank of Am. Inv. Servs.*,
     2013 U.S. Dist. LEXIS 32588 (N.D. Cal. Feb. 19, 2013)................................. 15

*Satterfield v. Simon & Schuster, Inc.*,
     569 F.3d 946 (9th Cir. 2009) ............................................................... 14

*Stemple v. QC Holdings, Inc.*,
     2016 U.S. Dist. LEXIS 55011 (S.D. Cal. Apr. 25, 2016) ................................. 19

*Stewart v. Abraham*,
     275 F.3d 220 (3d Cir. 2001) ................................................................ 19

*Torres v. Nutrisystem, Inc.*,
     2013 U.S. Dist. LEXIS 66444 (C.D. Cal. Apr. 8, 2013)................................... 15

*Torrisi v. Tucson Elec. Power Co.*,
     8 F.3d 1370 (9th Cir. 1993) ................................................................ 14

*In re Traffic Executive Ass'n—Eastern Railroads*,
     627 F.2d 631 (2d Cir. 1980) ................................................................ 12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
     396 F.3d 96 (2d Cir. 2005) ................................................................. 13

*Walters v. Reno*,
     145 F.3d 1032 (9th Cir. 1998) .......................................................... 19, 20

iv

**California Cases**

*Hataishi v. First Am. Home Buyers Prot. Corp.*,
    223 Cal. App. 4th 1454 (2014) ............................................................. 15

*Kight v. CashCall, Inc.*,
    231 Cal. App. 4th 112 (2014) ............................................................... 15

**Federal Statutes**

Telephone Consumer Protection Act, 47 U.S.C.
    § 227(a)(1) ............................................................................................ 14
    § 227(b) .................................................................................................. 3

**California Statutes**

California Invasion of Privacy Act, Cal. Penal Code
    § 632 ................................................................................................ 3, 15
    § 637.2 .................................................................................................... 3

**Other Authorities**

47 C.F.R. § 64.1200(a)(2) ............................................................................. 3

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal
    Practice & Procedure* § 1778 (2d ed. 1986) ......................................... 21

Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002), § 11.25 ................... 12

Fed. R. Civ. P.
    Rule 12(b)(6) ........................................................................................... 5
    Rule 23 ............................................................................................*passim*

*Manual for Complex Litigation (Fourth)* § 21.632 (2004) ....................................... 12

# I.     INTRODUCTION

This motion seeks preliminary approval of a $5.48 million cash settlement. Upon court approval, the settlement will resolve all of the claims asserted in this action, including (i) the class claims asserted by John Kerr against Response North, LLC ("Response North"), which allege that Response North made telemarketing calls to cellular telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and that Response North recorded telephone calls with California residents in violation of the California Invasion of Privacy Act, Cal. Penal Code § 630 *et seq.* ("Privacy Act");[1] and (ii) the class claim asserted by Edward Li ("Li"), Tim Barnard ("Barnard"), and Kenneth Curtis ("Curtis") against Zacks Investment Management, Inc. ("ZIM") and Zacks Investment Research, Inc. ("ZIR") (together, "Zacks"), in which plaintiffs allege that those entities violated the TCPA by making telemarketing calls to the cellular telephones of certain of their potential customers.[2]    A copy of the Settlement Agreement ("Agreement") is submitted as Exhibit 1 to the Declaration of Zachariah P. Dostart ("Dostart Decl.").

The Settlement is the result of more than a year of contested litigation.  The Settlement was entered into after the filing of several amended complaints, significant motion practice, and extensive discovery that included multiple sets of

---

[1]  Kerr's claims allege that Response North bears direct liability for the statutory violations, and that three other defendants—Zacks Investment Research, Inc. ("ZIR"), National Marketing Resources, LLC ("NMR"), and Paradigm Direct LLC ("Paradigm") (an affiliated entity of NMR) bear vicarious liability for those violations under agency principles.

[2]  In accordance with Section I.P. of the Settlement Agreement, the Parties have filed a joint motion seeking leave for plaintiffs to file a proposed Third Amended Complaint ("TAC").  The TAC adds three additional named plaintiffs for the direct-liability TCPA claim against ZIM and ZIR—Arnold Cares ("Cares"), Lia Johnson ("Johnson"), and John Abjanic ("Abjanic").  If the Court grants leave to file the TAC, the term "Plaintiffs" used herein will encompass Kerr, Li, Barnard, Curtis, Cares, Johnson, and Abjanic.  In addition, the proposed TAC omits previous allegations that Zacks violated the Privacy Act (discovery has established that Zacks did not record calls during the relevant period) and conforms the class definitions to be consistent with the Settlement Agreement.

1

interrogatories, multiple sets of requests for production, meet-and-confer efforts, contested discovery motions, production and review of tens of thousands of pages of documents, and three depositions of senior officers of ZIR, ZIM, and Response North.   Settlement efforts included two full-day mediation sessions before retired United States Magistrate Judge Leo S. Papas, and approximately a dozen post-mediation telephonic conferences with Judge Papas over the course of several months.   After supervising the entire course of settlement negotiations, Judge Papas ultimately set forth a mediator's proposal, which all Parties accepted.

The Settlement provides monetary consideration of $5,480,000.   Of that amount, Zacks will pay $4,650,000 to resolve the TCPA claim asserted against those entities, and Response North will pay $830,000 to resolve the TCPA and Privacy Act claims asserted against it.   (The Response North payment will also resolve the allegation that ZIR, NMR, and Paradigm bear vicarious liability for Response North's statutory violations.)   The Settlement is composed entirely of cash.   After court-approved deductions for expenses of administration, attorneys' fees and expenses, and class representative service payments, all settlement funds will be distributed to class members.   None of the $5,480,000 settlement amount can ever revert to a defendant.   To the extent there are any uncashed settlement checks, those funds will be distributed to court-approved *cy pres* recipients.

This Settlement is commensurate with settlements reached in other class action cases asserting TCPA or Privacy Act violations.   Accordingly, Plaintiffs request that the Court enter an order: (i) preliminarily approving the Settlement; (ii) conditionally certifying the classes described herein for settlement purposes; (iii) appointing for settlement purposes the law firm of Dostart Hannink & Coveney LLP as Class Counsel; (iv) appointing for settlement purposes plaintiff Kerr as class representative of the Response North TCPA Class and the Response North Privacy Class, and plaintiffs Li, Barnard, Curtis, Cares, Johnson, and Abjanic as class representatives of the Zacks Class; (v) appointing CPT Group, Inc. as the Settlement

1  Administrator; (vi) approving the proposed class notices, claim forms, and the
2  agreed-upon plan for dissemination of notice; and (vii) setting a final approval
3  hearing for approximately 20 weeks after preliminary approval.

4  **II.      SUMMARY OF THE TCPA AND THE PRIVACY ACT**

5      **A.      TCPA**

6      Enacted in 1991, the TCPA protects consumers from unwanted telephone
7  solicitations.  Among other things, the TCPA prohibits anyone from placing calls to
8  a cellular telephone using an automatic telephone dialing system ("ATDS") without
9  the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).  Further, 47 C.F.R.
10 § 64.1200(a)(2) requires that before using an ATDS to initiate a telemarketing call
11 to a cellular telephone, the calling party must obtain the recipient's prior express
12 written consent.  Violation of the TCPA gives rise to a private right of action for
13 injunctive relief and statutory damages of $500 per violation (which may be
14 increased to $1,500 for willful violations).  47 U.S.C. § 227(b)(3).

15     **B.      Privacy Act**

16     Enacted in 1967, the Privacy Act protects the right of privacy of the people of
17 the State of California by prohibiting the recording of confidential communications
18 made by telephone without the consent of all parties, and by prohibiting the
19 recording of any communication without the consent of all parties where one of the
20 parties is using a cellular or cordless telephone.  Cal. Penal Code §§ 632, 632.7.
21 Violation of the Privacy Act gives rise to a private right of action for injunctive
22 relief and statutory damages of $5,000 per violation.  Cal. Penal Code § 637.2.

23 **III.   FACTUAL BACKGROUND**

24     **A.      Facts Giving Rise to this Lawsuit**

25     In December 2015, Kerr saw a television commercial that advertised a book
26 entitled "How to Consistently Beat the Market," which was published by ZIR.  Kerr
27 called the telephone number displayed on the commercial and placed an order for
28 the book, which Kerr subsequently received.

1    In February 2016, Kerr received a telephone call on his cell phone.  Upon
2  answering the call, Kerr was engaged in conversation by a sales representative who
3  said he was calling from Zacks; that he was aware that Kerr had previously obtained
4  the book "How to Consistently Beat the Market"; and that there were other Zacks
5  products and services that would assist Kerr's understanding of the book.  The
6  representative attempted to persuade Kerr to buy other Zacks products and services.

7    Following receipt of that telephone call, Kerr approached counsel and
8  provided a description of the events that had transpired.  After further factual
9  investigation and legal analysis, this Litigation ensued.

10    **B.    The Litigation**

11    Kerr's initial complaint was filed on May 6, 2016 in the San Diego County
12  Superior Court.  Dkt. No. 1-2.  The initial complaint alleged that ZIR or its agents
13  placed telephone calls in violation of the TCPA, and recorded certain telephone calls
14  with California residents in violation of the Privacy Act.  On June 3, 2016, ZIR
15  removed the action to this Court (Dkt. No. 1) and filed an Answer (Dkt. No. 2).

16    On July 19, 2016, Kerr and ZIR participated in an Early Neutral Evaluation
17  conference with United States Magistrate Judge Barbara L. Major.  The case did not
18  settle, so Magistrate Judge Major issued a scheduling order.  Dkt. No. 18.

19    Discovery commenced on July 19, 2016.  Kerr served interrogatories and
20  requests for production on ZIR, and ZIR likewise served interrogatories and requests
21  for production on Kerr.  Dostart Decl. ¶ 5.  During the course of initial discovery,
22  ZIR produced information and documents indicating that the call to Kerr was made
23  by Response North, pursuant to a "Strategic Partnership" agreement between ZIR
24  and NMR regarding the promotion and sale of ZIR's books and materials.  *See* Dkt.
25  No. 24-3.  On September 1, 2016, Kerr filed a Motion for Leave to File a First
26  Amended Complaint, which proposed to name Response North, NMR, and
27  Paradigm in the place of fictitious defendants.  Dkt. No. 19.  In addition, the
28  proposed FAC sought to add Li, Barnard, and Curtis as named plaintiffs for a direct-

4

liability claim against ZIR.  ZIR filed opposition to that motion on September 16, 2016 (Dkt. No. 21), and Kerr's reply was filed on September 23, 2016 (Dkt. No. 22).  The Court granted the motion on September 29, 2016 (Dkt. No. 23), and the FAC was filed on October 3, 2016 (Dkt. No. 24).

After the filing of the FAC, ZIR served interrogatories and requests for production on plaintiffs Li, Barnard, and Curtis.  Kerr served discovery on Response North and NMR/Paradigm.  Dostart Decl. ¶ 7.

In October 2016, ZIR, Response North, and NMR/Paradigm filed motions to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. Nos. 31, 35, 38.  Those entities also filed motions to stay all proceedings in this action, based on the argument that any judicial determination in this action should await the outcome of an appeal pending before the Court of Appeals for the D.C. Circuit, *ACA International v. FCC*, No. 15-1211.  Dkt. Nos. 30, 39, 43.

Discovery gave rise to a number of disputes.  The parties were able to resolve many disputes informally, but some required Court intervention.  On October 13, 2016, counsel placed a joint call to Magistrate Judge Major to present their disagreement concerning Plaintiffs' Requests for Production Nos. 38 and 79-86.  Dostart Decl. ¶ 6; Dkt. No. 29.  Pursuant to Judge Major's order, on October 21, 2016, Kerr filed a motion seeking to compel ZIR to produce responsive documents.  Dkt. No. 33.  ZIR filed its opposition on October 28, 2016.  Dkt. No. 47.

On October 21, 2016, counsel again placed a joint call to Magistrate Judge Major to present their disputes regarding (i) whether Plaintiffs could take the depositions of Kevin Matras and Phil Smith to support Plaintiffs' oppositions to ZIR's pending motions to dismiss and to stay the action, and (ii) ZIR's proposed motion to stay discovery pending a ruling on its motion to stay the proceedings.  Dostart Decl. ¶ 6; Dkt. No. 34.  Pursuant to the ensuing Court order, Kerr and ZIR filed letter briefs on October 28, 2016.  Dkt. Nos. 44, 46.  On October 31, 2016,

1  Magistrate Judge Major granted Plaintiffs' motion to compel the depositions of
2  Kevin Matras and Phil Smith.  Dkt. No. 49.

3      At that point the Parties agreed to participate in mediation.  On November 2,
4  2016, the Parties filed a joint motion to stay proceedings and continue the hearing
5  dates pending mediation, which the Court granted.  Dkt. No. 51.  On November 3,
6  2016, Magistrate Judge Major issued an order denying as moot ZIR's motion to stay
7  discovery and denying without prejudice Plaintiffs' motion to compel.  Dkt. No. 52.

8      On January 13, 2017, the Parties attended a mediation session before Judge
9  Papas.  Dostart Decl. ¶ 7.  Although the mediation did not result in a settlement,
10 Judge Papas indicated that significant progress had been made and he encouraged
11 the Parties to agree to a further informal exchange of information as a prelude to a
12 second day of mediation.  *Id*.  On February 28, 2017, the Parties filed a joint motion
13 to extend the stay for mediation, which was granted on March 1, 2017.  Dkt. No. 59.
14 The second mediation session was held on April 7, 2017, but it too ended without a
15 settlement.  Dostart Decl. ¶ 7.  As a result, discovery moved forward.

16     On April 18, 2017, Plaintiffs' counsel took the deposition of Kevin Matras,
17 Vice President of ZIR.  Dostart Decl. ¶ 8.  That deposition produced information
18 from which Plaintiffs' counsel concluded that ZIM could bear responsibility for the
19 direct-liability TCPA claim previously asserted only against ZIR.  *Id*.  On April 21,
20 2017, the Parties filed a joint motion authorizing Plaintiffs to file a Second
21 Amended Complaint, to name ZIM in the place of a fictitious defendant.  Dkt. No.
22 63.  The Court granted that motion on April 21, 2017.  Dkt. No. 64.  Plaintiffs filed
23 the SAC on April 27, 2017.  Dkt. No. 65.  In view of the filing of the SAC, on May
24 1, 2017, the Parties filed a joint motion to withdraw the pending motions to stay, and
25 to extend Defendants' deadline to respond to the SAC.  Dkt. No. 68.  The Court
26 granted that motion on May 2, 2017.  Dkt. No. 69.

27     On June 2, 2017, Response North filed its Answer to the SAC.  Dkt. No. 82.
28 Also on June 2, 2017, ZIR and NMR/Paradigm filed motions to dismiss the SAC

6

and to stay proceedings.  Dkt. Nos. 80, 81, 83, 84, and 85.  On June 27, 2017, ZIM likewise filed a motion to dismiss.  Dkt. No. 91.  Plaintiffs filed oppositions to the ZIR and NMR/Paradigm motions on June 30, 2017 (Dkt. Nos. 93, 94, 95), and filed opposition to the ZIM motion on July 14, 2017 (Dkt. No. 99).  ZIR filed its reply briefs on July 14, 2017 (Dkt. Nos. 100, 101), and ZIM filed its reply brief on July 28, 2017 (Dkt. No. 102).

While that briefing was underway, the Parties continued to explore the potential for settlement with the assistance of Judge Papas.  Following back-and-forth negotiations, Judge Papas made a mediator's proposal, which all Parties accepted.  Dostart Decl. ¶ 9.  On August 10, 2017, the Parties informed the Court of the Settlement.  Dkt. No. 104.

The mediator's proposal contemplated that Plaintiffs could take additional discovery to confirm representations made in the context of mediation.  Plaintiffs requested and obtained additional documents from both Zacks and Response North. Dostart Decl. ¶ 10.  Plaintiffs also took the depositions of Frank C. Lanza, Chief Compliance Officer & Chief Operating Officer of ZIM, and Phil Smith, Manager of Response North.  *Id.*  The Parties then finalized and signed the Settlement Agreement.

## IV.   KEY SETTLEMENT TERMS

### A.   Settlement Class Definitions

The Parties request that the Court certify three settlement classes.  The "Zacks Class" is defined as follows:

> All natural persons nationwide who, between and including May 6, 2012 and June 30, 2017, received a telephone call that was (1) made to their cellular telephone and (2) initiated by or on behalf of ZIR or ZIM using an automatic telephone dialing system.  Excluded from the Zacks Class are all employees of defendants, all employees of defendants' counsel, all employees of plaintiffs' counsel, and judicial officers, their family members, and court staff assigned to the Lawsuit.

7

The "Response North TCPA Class" is defined as follows:

All natural persons nationwide who received from Response North a telephone call reflected in contact databases produced by Response North, which  (1) was placed as part of the Zacks Book Campaign and/or the Options Trading Campaign and (2) was received on a cellular telephone.  Excluded from the Response North TCPA Class are all employees of Response North, all employees of Response North's counsel, all employees of plaintiffs' counsel, and judicial officers, their family members, and court staff assigned to the Lawsuit.

The "Response North Privacy Class" is defined as follows:

All California residents who received from Response North a telephone call reflected in contact databases produced by Response North, which (1) was made on a telephone line that was subject to recording by Response North and (2) was received by the recipient in the State of California.  Excluded from the Response North Privacy Class are all employees of Response North, all employees of Response North's counsel, all employees of plaintiffs' counsel, and judicial officers, their family members, and court staff assigned to the Lawsuit.

Agreement, Section III.B.

### B.     Monetary Consideration

The total monetary consideration is $5,480,000.  Of that amount, $4,650,000 is for the claims of the Zacks Class (the "Zacks Monetary Consideration") and $830,000 is for the claims of the combined Response North TCPA Class and the Response North Privacy Class (the "Response North Monetary Consideration"). Agreement, Section IV.A-B.  Within ten court days following the Preliminary Approval Date, Zacks will deposit $250,000 into an interest-bearing account administered by the Settlement Administrator, and Response North will make a similar deposit of $200,000.  The balance of the Zacks Monetary Consideration and the Response North Monetary Consideration will be transferred to the Settlement Administrator within ten court days following the Effective Date (*i.e.*, following final approval and entry of judgment).  Agreement, Section IV.B.

### C.     Appointment of Class Representatives and Class Counsel

The Parties request, for settlement purposes only, that Kerr be appointed as class representative of the Response North TCPA Class and the Response North Privacy Class; that Li, Barnard, Curtis, Cares, Johnson, and Abjanic be appointed as

8

1  class representatives of the Zacks Class; that Dostart Hannink & Coveney LLP be

2  appointed as Class Counsel; and that CPT Group, Inc. be appointed as the

3  Settlement Administrator.  Agreement, Section III.E-H.

4    **D.    Class Notice**

5    Response North and Zacks both maintain databases that include contact

6  information about customers and potential customers.  Those databases will be

7  employed to deliver individualized notice to potential class members.

8    **1.    Summary Notice to the Response North Classes**

9    Response North maintains business records (the "Response North Database")

10  that reflect the name, address, telephone number, and/or email address of individuals

11  to whom it directed the telephone calls at issue.  The Settlement contemplates that a

12  Summary Notice will be provided via email to each individual for whom the

13  Response North Database contains an email address (which is the vast majority).

14  For any individuals with respect to whom the Response North Database does not

15  contain an email address, the Summary Notice will be mailed to the mailing address

16  listed in the Response North Database, as updated by the U.S. Postal Service's

17  National Change of Address ("NCOA") database.  To the extent any emails are

18  "bounced back," a copy of the Summary Notice will be mailed.  Individuals

19  identified from the Response North Database as potential members of the Response

20  North TCPA Class will receive Summary Notice in the form of Exhibit A attached

21  to the Settlement Agreement; Exhibit B is for individuals who are potential

22  members of the Response North Privacy Class; and Exhibit C is for those who are

23  potential members of both the Response North TCPA Class and the Response North

24  Privacy Class.  Agreement, Section VII.D.

25    **2.    Summary Notice to the Zacks Class**

26    Zacks maintains business records (the "Zacks Database") that reflect name,

27  address, telephone, and/or email address information of individuals that Zacks

28  believes are most likely to have received the telephone calls at issue with respect to

9

1   the Zacks Class.  The Settlement contemplates that a Summary Notice tailored to the

2   Zacks Class (Agreement, Exhibit D) will be provided via email to each individual

3   for whom the Zacks Database contains an email address (which is the vast majority).

4   For any individuals with respect to whom the Zacks Database does not contain an

5   email address, the Summary Notice will be mailed to the mailing address listed in

6   the Zacks Database, as updated by the NCOA database.  To the extent emails are

7   "bounced back," those individuals will likewise receive a mailed copy of the

8   Summary Notice.  Agreement, Section VII.D.

9              **3.      Publication Notice to the Zacks Class**

10       In addition to the individualized Summary Notice described above, notice to

11  the Zacks Class will also be provided through publication notice in the *Wall Street*

12  *Journal*.  Agreement, Section VII.G.  The Settlement provides for this publication

13  notice because the Zacks Database is not derived from an actual call list, *i.e.*, it is

14  possible that Zacks may have made some ATDS calls to individuals who are not

15  reflected in the Zacks Database.  (Similarly, because the Zacks Database is not

16  derived from a call list, it is possible that some individuals listed in the Zacks

17  Database did not receive an ATDS call.)  Because the nature of the calls would have

18  involved offering investment management or advisory services, the *Wall Street*

19  *Journal* is an appropriate newspaper for publication notice.

20              **4.      Long Form Notice**

21       In addition to the Summary Notices described above, the Settlement

22  Administrator will post a Long Form Notice on the Settlement Website.  Agreement,

23  Section VII.H. and Ex. F.

24       **E.      The Claims Process**

25       Potential class members will have 60 days following the Notice Date to either

26  submit claims, request to be excluded from the Settlement ("opt out"), or file

27  objections.  All class members who receive a Summary Notice via email or mail

28  will be able to file a claim electronically via the Website.  Class members will also

1  have the ability to submit a paper claim form.  After completion of the notice and

2  claims process, Plaintiffs will file a motion for final approval.

3        **F.**    **Distribution of Settlement Amount**

4       If the Settlement is approved, the settlement funds will be used to pay the

5  expenses of settlement administration, Class Counsel's attorneys' fees and litigation

6  expenses (as approved by the Court), service payments to Kerr, Li, Barnard, Curtis,

7  Cares, Johnson, and Abjanic (as approved by the Court), and the settlement

8  payments to class members.  Participating Zacks Class Members will receive a pro-

9  rata portion of the Net Zacks Settlement Fund.  Agreement, Section VIII.

10  Participating Response North Class Members will receive a share of the Net

11  Response North Settlement Fund, as follows:  Each Participating Response North

12  TCPA Class Member will be credited with three (3) points, and each Participating

13  Response North Privacy Class Member will be credited with ten (10) points.  (Thus,

14  an individual who is a member of both the Response North TCPA Class and the

15  Response North Privacy Class will be credited with thirteen (13) points.)  The Net

16  Response North Settlement Amount will be allocated among the Response North

17  Class Members in proportion to the number of points credited to all timely and valid

18  claims submitted by all Response North Class Members.  Agreement, Section VIII.

19  This allocation reflects the fact that the maximum statutory award for a TCPA

20  violation is $1,500, whereas the maximum statutory award for Privacy Act violation

21  is $5,000 (*i.e.*, a 3 to 10 ratio).

22       If any funds are remaining by reason of uncashed settlement checks or

23  otherwise, such funds will be paid to *cy pres* recipients.  Agreement, Section VIII.D.

24  The proposed *cy pres* recipients are the Consumer Federation of California and the

25  National Consumer Law Center.  Thus, if the Settlement becomes effective, no

26  portion of the monetary consideration can ever revert to a defendant.

27  / / /

28  / / /

### G.    Releases

Upon the Effective Date, Plaintiffs and all class members will be deemed to release the appropriate defendants for the TCPA and Privacy Act claims asserted in the TAC.  Agreement, Section IX.A-D.

## V.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    The Standard for Preliminary Approval

Court approval of a class action settlement involves a two-step process.  The parties first submit the proposed terms of the settlement to the court for a preliminary fairness evaluation.  If the preliminary evaluation of the settlement does not disclose a basis to doubt its fairness or other obvious deficiencies, the court then directs that notice be given to the class and sets a final fairness hearing.  *Manual for Complex Litigation (Fourth)* § 21.632 (2004).

Preliminary approval should be granted if the proposed settlement falls "within the range of possible final approval."  *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002), § 11.25 at pp. 38-39.  Stated another way, preliminary approval is "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Executive Ass'n—Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

The policy of the federal courts is to encourage settlement before trial. *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989).  "Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. … The economics of litigation are such that pretrial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process."  *Id.*  The Ninth Circuit has recognized that "the very essence of a settlement is compromise."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).  "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce

12

1  consensual settlements." *Id*. at 625.

2      The "universal standard" in evaluating the fairness of a settlement is whether

3  the settlement is "fundamentally fair, adequate and reasonable." *Officers for*

4  *Justice*, 688 F.2d at 625. "[T]he court's intrusion upon what is otherwise a private

5  consensual agreement negotiated between the parties to a lawsuit must be limited to

6  the extent necessary to reach a reasoned judgment that the agreement is not the

7  product of fraud or overreaching by, or collusion between, the negotiating parties,

8  and that the settlement, taken as a whole, is fair, reasonable and adequate to all

9  concerned." *Id*. The proposed settlement is not to be judged against a hypothetical

10  or speculative measure of what might have been achieved by the negotiators.

11  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citing

12  *Officers for Justice*, 688 F.2d at 625). Thus, even if the amount of a proposed

13  monetary settlement is a fraction of the potential recovery, that does not render the

14  settlement inadequate. *Linney*, 151 F.3d at 1242.

15      A proposed settlement is presumptively fair when: (i) it is reached through

16  arm's-length negotiations; (ii) the putative class is represented by experienced

17  counsel; and (iii) the parties have conducted sufficient discovery. *Wal-Mart Stores,*

18  *Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). All of those factors are

19  present in this case. The proposed Settlement is the product of arm's-length, non-

20  collusive negotiations overseen by a respected independent mediator (Dostart Decl.

21  ¶ 9); the class is represented by experienced counsel (*id*., ¶¶ 2-4); and the Parties

22  exchanged a significant amount of information both informally and through

23  discovery so that Plaintiffs and their counsel can make an informed recommendation

24  about the Settlement (*id*., ¶ 11). Thus, the Settlement is presumed to be fair.

25      In evaluating the fairness of a settlement, the district court can weigh a variety

26  of factors, including the strength of the plaintiffs' case; the risk, expense,

27  complexity, and likely duration of further litigation; the risk of maintaining class

28  action status throughout the trial; the amount offered in settlement; the extent of

1   discovery completed and the stage of the proceedings; the experience and views of

2   counsel; the presence of a governmental participant; and the reaction of the class

3   members to the proposed settlement.   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

4   1026 (9th Cir. 1998).   The relative degree of importance to be attached to any

5   particular factor depends upon the circumstances of each case.   *Torrisi v. Tucson*

6   *Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).   Plaintiffs submit that the

7   pertinent factors warrant preliminary approval of the instant Settlement.

8   **B.    The Strength of Plaintiffs' Claims and the Risks and Expense of**
         **Further Litigation**

9

10   Although Plaintiffs are confident in the substantive merit of the claims,

11   further litigation would entail a number of risks that counsel in favor of settlement.

12   Defendants have asserted defenses to the merits, including the argument that the

13   equipment used to dial the telephone calls at issue did not constitute an ATDS as

14   defined by the TCPA.[3]   On the other hand, Plaintiffs contend that the definition of

15   ATDS properly covers equipment that has the "capacity" to auto-dial, including by

16   addition of software, as well as predictive dialers, as the Federal Communications

17   Commission ("FCC") and the Ninth Circuit have held.   *Satterfield v. Simon &*

18   *Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009).   This issue is now pending before

19   the Court of Appeals for the D.C. Circuit in *ACA International*.   Absent a

20   settlement, there would be a risk that a decision in *ACA International*, or a

21   subsequent ruling by the FCC, could adversely affect Plaintiffs' TCPA claims.

22   Defendants would also assert defenses in opposition to a contested motion for

23   class certification.   For example, Defendants have contended that issues of consent

24   would make it difficult for Plaintiffs to obtain class certification in the first instance,

25   _____

26   [3] 47 U.S.C. § 227(a)(1) defines ATDS as a device that uses a random or sequential
27   number generator to produce and store telephone numbers, and then calls those
     numbers.

28

or to maintain class certification through trial.  Zacks and Response North would argue that they did not purchase "leads" or dial numbers at random, but instead, each individual they called had previously provided their telephone number (either through the ZIR website or, as in the case of Kerr, in connection with a prior transaction).  Although Plaintiffs believe that they could overcome these arguments, there is risk that the Court could decline to certify a TCPA class in the context of a contested motion.  *See, e.g.*, *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 578 (S.D. Cal. Oct. 29, 2013) (Sammartino, J.) (denying class certification in TCPA case); *Gannon v. Network Tel. Servs., Inc.*, 2013 U.S. Dist. LEXIS 81250, at *3 (C.D. Cal. Jun. 5, 2013) (denying certification in TCPA case); *Franklin v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 13696 (S.D. Cal. Jan. 29, 2016) (noting, in a TCPA case, that "it appears there is some risk that the Class would either not be certified or that something may arise before trial that would require the Court to decertify a class.  Accordingly, this factor weighs in favor of settlement.").

Regarding the Privacy Act claim, Response North has argued (among other things) that it had a policy that customer service representatives should advise call participants that the call was being recorded, and that the telephone calls did not involve "confidential communications" within the meaning of Cal. Penal Code § 632(c).  In the call-recording context, at least two federal district courts have denied motions for class certification, and two panels of the California Court of Appeal have affirmed trial court orders denying class certification.  *See Quesada v. Bank of Am. Inv. Servs.*, 2013 U.S. Dist. LEXIS 32588 (N.D. Cal. Feb. 19, 2013); *Torres v. Nutrisystem, Inc.*, 2013 U.S. Dist. LEXIS 66444 (C.D. Cal. Apr. 8, 2013); *Hataishi v. First Am. Home Buyers Prot. Corp.*, 223 Cal. App. 4th 1454 (2014); *Kight v. CashCall, Inc.*, 231 Cal. App. 4th 112 (2014).  Although at least one federal district court has granted class certification in a Privacy Act case, *see Ades v. Omni Hotels Mgmt. Corp.*, 2014 U.S. Dist. LEXIS 129689 (C.D. Cal. Sept. 8, 2014), there is no

15

1  doubt that a motion for class certification of the Privacy Act claim would be hotly
2  contested and there could be no certainty about the outcome.

3      Apart from risks associated with class certification and trial, if the litigation
4  were to continue, the trial process itself and subsequent appeals would take years,
5  with very substantial expenditures of time and resources by the Parties and the
6  Court, and without any guarantee of recovery for class members.  The proposed
7  Settlement eliminates all litigation risks and ensures that the class members receive
8  some compensation for their claims on a timely basis.

9      **C.   The Settlement Amount**

10     The Settlement will result in monetary payments to all class members who
11  submit timely and valid claims.  Based on the Zacks Database, there are
12  approximately 266,696 potential members of the Zacks Class.  Thus, the Zacks
13  Monetary Consideration of $4,650,000 equates to approximately $17.43 per person
14  on a gross basis.  Of course, to the extent the claims rate is less than 100%, the
15  amount allocable to each Participating Zacks Class Member will be higher.

16     Based on the Response North Database, there are about 13,522 potential
17  members of the Response North TCPA Class and about 15,735 potential members
18  of the Response North Privacy Class.  These figures include about 1,540 individuals
19  who are potential members of both of the Response North classes.  The Response
20  North Monetary Consideration is $830,000.  Because each valid claim of the
21  Response North Privacy Class is ultimately paid out at 3.33 times the amount of a
22  valid claim for the Response North TCPA Class—*see* Agreement Section VIII.C.—
23  the Response North Monetary Consideration equates to approximately $41.90 per
24  person for the Response North Privacy Class, approximately $12.57 per person for
25  the Response North TCPA Class, and $54.47 for those who submit valid claims for
26  both classes.  Of course, to the extent the claims rate is less than 100%, the amount
27  allocable to each Participating Response North Class Member will be higher.

28

The per-person figures for the Zacks Class and the Response North TCPA Class (approximately $17.43 and $12.57, respectively) compare favorably to other TCPA settlements. *See, e.g.*, *Kramer v. Autobytel, Inc.*, 2012 U.S. Dist. LEXIS 185800, at *2, 13 (N.D. Cal. Jan. 27, 2012) and Dostart Decl. Ex. 2 at 86, 89 (granting final approval of a $12.2 million settlement for a class that included over 47 million individuals, or $0.25 per class member); *Malta v. Fed. Home Loan Mortg. Corp.*, 2013 U.S. Dist. LEXIS 15731, at *11, *30 (S.D. Cal. Feb. 5, 2013) (preliminary approval of a $17.1 million settlement for a class consisting of 5,887,508 members, or $2.90 per class member; final approval granted at Dkt. No. 91); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH (WVG) (S.D. Cal.) (Dkt. Nos. 109 & 137) (Dostart Decl. Ex. 4 at 119-20) (approving $9 million settlement for a class consisting of 6,079,411 members, or $1.48 per class member); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211-JLR (W.D. Wash.) (Dkt. Nos. 84 & 91) (Dostart Decl. Ex. 6 at 154, 156, 157) (approving $5.5 million settlement to benefit a class consisting of 18.1 million members); *In re Portfolio Recovery Assocs., LLC, Telephone Consumer Protection Act Litigation*, Case No. 3:11-md-02295-JAH (BGS) (S.D. Cal.) (Dkt. No. 355) (June 23, 2016) (granting preliminary approval of $18 million settlement to benefit a class consisting of 7.4 million members, or $2.43 per class member; final approval granted at Dkt. No. 494) (Dostart Decl. Ex. 8 at 199).

Similarly, the per-person figure for the Response North Privacy Class (approximately $41.90) compares favorably to other class action settlements under the Privacy Act. *See, e.g.*, *Skuro v. BMW of North America, LLC*, Case No. 10-8672 GW (FFMx) (C.D. Cal.) (approving a settlement involving 40,000 class members with an option of selecting a six-month extension of the BMW Assist basic safety plan (valued by the parties at $100) or making a claim for *up to* $50, or as low as $7.50, against a $300,000 settlement fund) (Dostart Decl. Ex. 9 at 230, 234); *Zaw v. Nelnet Business Solutions, Inc.*, Case No. 3:13-cv-05788-RS (N.D. Cal.) (the gross

settlement amount was $1,188,110 for 104,100 potential class members, equating to $11.41 per person) (Dostart Decl. Ex. 10 at 255-56); *Batmanghelich v. Sirius XM Radio, Inc.*, Case No. 09-9190 VBF (JCx) (C.D. Cal.) ($9,480,000 on behalf of a class estimated to include more than 1,000,000 class members, or $9.48 per person) (Dostart Decl. Ex. 11 at 278, 282); *Greenberg v. E-Trade Financial Corporation*, L.A. Super. Ct. No. BC360152 (May 11, 2009) ($7.5 million settlement for as many as 1,000,000 customers, or as low as $7.50 per person) (Dostart Decl. Ex. 13 at 308, 317). Thus, viewed in the context of other settlements, the instant Settlement represents a favorable result.

### D. The Extent of Discovery Completed and Stage of the Proceedings

As summarized above in Section III.B, discovery in this action was extensive and hard-fought. Over the course of the litigation, Plaintiffs propounded four sets of interrogatories (totaling 60 interrogatories) and eight sets of requests for production (totaling 164 requests). Dostart Decl. ¶ 11. Defendants' written discovery included four sets of interrogatories (totaling 68 interrogatories) and four sets of requests for production (totaling 176 requests). *Id.* Document discovery involved the production and review of tens of thousands of pages. *Id.* In addition to formal discovery, the Parties also exchanged information informally during the mediation process. Thus, there is sufficient information to enable Plaintiffs and Class Counsel to evaluate the case and enter into the proposed Settlement. *Id.*

### E. The Experience and Views of Counsel

The law firm of Dostart Hannink & Coveney LLP (including its predecessor firms) has been appointed as lead or co-lead class counsel in more than 50 certified class actions. Dostart Decl. ¶ 4. The attorneys handling this action specialize in class action litigation on behalf of consumers. *Id.* ¶¶ 2-4. Class Counsel believes the settlement is fair, reasonable, and in the best interests of the class members. *Id.* ¶ 12.

///

### F.     The Reaction of the Class to the Settlement

Following preliminary approval, class members will have an opportunity to object or opt-out of the Settlement.  Class Counsel will report on the reaction of the class members at the final approval hearing.

## VI.    THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASSES

At the preliminary approval step, a district court must also determine that a class should be certified for settlement purposes.  In many similar cases alleging violations of the Privacy Act and TCPA, district courts have held that it is proper to certify such classes for settlement purposes.  *See, e.g.*, *Malta v. Fed. Home Loan Mortg. Corp.*, 2013 U.S. Dist. LEXIS 15731, at *3-12 (S.D. Cal. Feb. 5, 2013) (finding certification appropriate for settlement class of TCPA claim); *Stemple v. QC Holdings, Inc.*, 2016 U.S. Dist. LEXIS 55011, at *7-18 (S.D. Cal. Apr. 25, 2016) (same); *McDonald v. Bass Pro Outdoor World, LLC*, 2014 U.S. Dist. LEXIS 109080, at *7-16 (S.D. Cal. Aug. 4, 2014) (finding certification appropriate for settlement of Privacy Act claim).

### A.     The Settlement Classes Meet the Requirements of Rule 23(a)

A class is appropriate for certification if:  "(1) the class is too numerous, making joinder of the parties impracticable; (2) common questions of law or fact exist among the class members; (3) the claims of the class representatives are typical of the claims of the class; and (4) the class representatives will adequately represent the interest of the class."  *Walters v. Reno*, 145 F.3d 1032, 1045 (9th Cir. 1998). Each of those requirements is met in the instant case.[4]

---

[4] As set forth in the Settlement Agreement, Defendants deny any and all allegations of liability or wrongdoing asserted in the Lawsuit and deny that any of the claims alleged in the Lawsuit are suitable for class certification other than for purposes of settlement.

### 1.     Numerosity

Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  In *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001), the court observed that if a class exceeds 40 members, the numerosity element is satisfied.  Here, each class includes thousands of individuals.  Dostart Decl. ¶ 13.

### 2.     Commonality

The commonality requirement serves two purposes: (i) ensuring that absentee members are fairly and adequately represented and (ii) ensuring practical and efficient case management.  *Walters*, 145 F.3d at 1045 (citing *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982)).  The standard under Rule 23(a)(2) is "permissive."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

The commonality element is satisfied here.  The Zacks Class Members allegedly received telephone calls to their cellular telephones initiated by Zacks using an ATDS, and thus, their claims involve common legal and factual issues. The Response North TCPA Class Members allegedly received telephone calls to their cellular telephones initiated by an ATDS, and the calls were initiated to offer products and/or services, and thus, their claims also involve common legal or factual issues.  The Response North Privacy Class Members were all allegedly the subject of undisclosed recording by Response North.

### 3.     Typicality

A class representative's claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  "The commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately

20

protected in their absence." *Gen. Tel. Co. of Sw.*, 457 U.S. at 157 n.13. The typicality element is satisfied here. The named plaintiffs allege that they, like the members of the Zacks Class and the Response North TCPA Class, received telemarketing calls to their cellular telephones without the requisite prior express consent. Furthermore, Kerr alleges that he, like the members of the Response North Privacy Class, participated in telephone communications that were recorded by Response North without the requisite consent.

### 4. Adequacy

"[T]wo criteria for determining the adequacy of representation have been recognized. First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). The adequacy requirement is met here. Plaintiffs have no interests that are antagonistic to those of the other class members and have retained counsel experienced in class action litigation. Dostart Decl. ¶¶ 2-4, 15.

### B. The Settlement Classes Meet the Requirements of Rule 23(b)(3)

The predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986). As to the Zacks Class and the Response North TCPA Class, predominating common issues include the type of telephone dialing equipment employed by Zacks and Response North, the purpose of the calls, and whether Zacks or Response North had procedures in place to obtain written consent. Dostart Decl ¶ 14. As to the

1   Response North Privacy Class, predominating common issues include Response
2   North's policies and procedures regarding the recording of telephone calls. *Id.*
3   Thus, it is appropriate to resolve these claims via settlement on a classwide basis.

4       The superiority prong of Rule 23(b)(3) involves a comparison of potential
5   alternative mechanisms for resolving the dispute. *Hanlon*, 150 F.3d at 1023. Here,
6   the only alternative to a class action would be thousands of individual actions, which
7   would be neither practical nor efficient. Individual litigation would consume scarce
8   judicial resources, impose substantial additional burdens and expense on the
9   litigants, and present a risk of inconsistent rulings.

10  **VII.   THE COURT SHOULD APPROVE THE CLASS NOTICE**

11      Pursuant to Fed. R. Civ. P. 23(e)(1), "[t]he court must direct notice in a
12  reasonable manner to all class members who would be bound by the proposal."
13  "The notice must clearly and concisely state in plain, easily understood language:
14  (i) the nature of the action; (ii) the definition of the class certified; (iii) the class
15  claims, issues, or defenses; (iv) that a class member may enter an appearance
16  through an attorney if the member so desires; (v) that the court will exclude from the
17  class any member who requests exclusion; (vi) the time and manner for requesting
18  exclusion; and (vii) the binding effect of a class judgment on members under Rule
19  23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). Notice is satisfactory if it "generally
20  describes the terms of the settlement in sufficient detail to alert those with adverse
21  viewpoints to investigate and come forward and be heard." *Churchill Village, LLC*
22  *v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

23      Here, the proposed Summary Class Notices (Exhibits A-D to the Agreement)
24  describe the litigation, the terms of the Settlement applicable to each class, and the
25  class members' options. The Settlement Administrator will email the appropriate
26  Court-approved Summary Class Notice to the last-known email address of each
27  individual whose email address is contained in the Zacks Database or the Response
28  North Database. The Zacks Database contains name, address, telephone, and/or

1 email address information of approximately 266,696 individuals that Zacks believes
2 are most likely to have received the telephone calls at issue with respect to the Zacks
3 Class.  About 99% of those potential Zacks class members have an email address in
4 the Zacks Database.  The Response North Database contains the name, address,
5 telephone, and/or email address information of about 13,522 individuals who are
6 potential members of the Response North TCPA Class, and about 15,735
7 individuals who are potential members of the Response North Privacy Class.
8 (Those figures include about 1,540 individuals who are potential members of both
9 classes.)  The Response North Database includes an email address and/or a mailing
10 address for an estimated 98% of all potential Response North class members.  Email
11 is an accepted method for providing notice.  *Lagos v. Leland Stanford Junior Univ.*,
12 2017 U.S. Dist. LEXIS 23258, at *6-7 (N.D. Cal. Feb. 17, 2017).

13 For individuals with respect to whom the Zacks Database or the Response
14 North Database do not contain email information (or for whom the email address
15 "bounces back"), the Settlement Administrator will mail a copy of the appropriate
16 Summary Class Notice to the individual's last-known mailing address, as updated
17 by the NCOA database.  Agreement, Section VII.D.  This procedure for mailing
18 satisfies due process.  *Overton v. Hat World, Inc.*, 2012 U.S. Dist. LEXIS 144116, at
19 *5 (E.D. Cal. Oct. 4, 2012).  In addition, a Long Form Notice will be posted on the
20 Settlement Website.

21 Moreover, because it is possible that Zacks could have made ATDS calls to
22 some individuals who are not reflected in the Zacks Database, the Settlement also
23 provides for Publication Notice for the Zacks Class.  Agreement, Section VII.G. and
24 Ex. E thereto.  The Publication Notice will be published in the *Wall Street Journal*,
25 which Class Counsel believes is the best forum for publication given that the
26 primary purpose for those calls was to offer investment and/or financial advisory
27 services.  Accordingly, the notice plan complies with Rule 23 and due process.

28

1    Administration of the Settlement will proceed as follows.  Within three court
2  days after entry of a preliminary approval order, Class Counsel will provide the
3  Settlement Administrator with the Zacks Database and the Response North
4  Database.  Within 30 days after preliminary approval, the Settlement Administrator
5  will email the appropriate Summary Class Notice to the last-known email address of
6  each class member, or if there is no known email address, to the last-known mailing
7  address.    Agreement, Section VII.D.    Prior to the mailing, the Settlement
8  Administrator will run the address information through the NCOA database.  The
9  date of mailing is the "Notice Date."  Within 14 days following the Notice Date, if
10  any emailed documents are "bounced back" as undeliverable, the Settlement
11  Administrator will mail a copy of the appropriate Summary Class Notice to the
12  person's last-known physical address, to the extent that information is available in
13  the Zacks Database or the Response North Database. Agreement, Section VII.E.
14  For a period of 30 days following the Notice Date, if any Summary Class Notices
15  are returned as undeliverable, the Settlement Administrator will perform a skip-trace
16  and/or other customary address search in an attempt to locate a valid address, and if
17  a new address is obtained, re-mail the Summary Class Notice to that address.
18  Agreement, Section VII.F.  The Settlement Administrator will also post a Long
19  Form Class Notice on the Website.  Agreement, Section VII.H. and Ex. F thereto.

20    The date 60 days after the Notice Date is the "Claim/Exclusion/Objection
21  Deadline."   Agreement, Section VII.L.   Any class member who wishes to be
22  excluded from the Settlement, or object to the Settlement, may do so on or before
23  that deadline.  Agreement, Section VII.S-T.  Individuals who submit timely and
24  valid claims are the "Participating Class Members," who will receive monetary
25  payments under the Settlement.  Agreement, Sections VII.V. and VIII.

26  / / /
27  / / /
28  / / /

**VIII.  PLAINTIFFS WILL FILE A NOTICED MOTION REGARDING ATTORNEYS' FEES, LITIGATION EXPENSES, AND CLASS REPRESENTATIVE SERVICE PAYMENTS**

Before the Claim/Exclusion/Objection deadline, Class Counsel will file a motion requesting an award of attorneys' fees, reimbursement of actual litigation expenses, and service payments to Plaintiffs.  The Settlement Agreement authorizes Class Counsel to seek an award of attorneys' fees of up to twenty-five percent (25%) of the aggregate sum of the Zacks Monetary Consideration and the Response North Monetary Consideration, and up to $70,000 in reimbursement of actual litigation expenses.  Agreement, Section V.  The Settlement Agreement also authorizes Class Counsel to seek service payments to Plaintiffs for their service as plaintiffs and class representatives of up to $30,000 in the aggregate.  Agreement, Section VI.  All amounts awarded will be a matter for the Court's discretion.

**IX.    CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that the Court preliminarily approve the Settlement, conditionally certify the classes for settlement purposes, approve and authorize the class notices, and set a date for the final approval hearing approximately 20 weeks after preliminary approval.

Dated: September 25, 2017                    DOSTART HANNINK & COVENEY LLP


                                             /s/ Zach P. Dostart
                                             ZACH P. DOSTART
                                             Attorneys for Plaintiffs
                                             zdostart@sdlaw.com

824156.6