JAMES T. HANNINK (131747)
jhannink@sdlaw.com
ZACH P. DOSTART (255071)
zdostart@sdlaw.com
DOSTART HANNINK & COVENEY LLP
4180 La Jolla Village Drive, Suite 530
La Jolla, California 92037-1474
Tel: 858-623-4200
Fax: 858-623-4299

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN KERR, EDWARD LI, TIM BARNARD, KENNETH CURTIS, LIA JOHNSON, JOHN ABJANIC, and ARNOLD CARES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ZACKS INVESTMENT RESEARCH, INC., an Illinois corporation; NATIONAL MARKETING RESOURCES, LLC, a Missouri limited liability company; PARADIGM DIRECT LLC, a Delaware limited liability company; RESPONSE NORTH, LLC, a Utah limited liability company; ZACKS INVESTMENT MANAGEMENT, INC., an Illinois corporation; and DOES 6-50, inclusive,<br><br>Defendants. | CASE NO. 16-CV-01352 GPC BLM<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF:**<br><br>**(1) TELEPHONE CONSUMER PROTECTION ACT ("TCPA") [47 U.S.C. § 227]**<br><br>**(2) CALIFORNIA INVASION OF PRIVACY ACT [Cal. Penal Code § 630 *et seq.*]**<br><br>**DEMAND FOR JURY TRIAL** |

## GENERAL ALLEGATIONS

1. Plaintiff John Kerr ("Kerr") is an individual residing in San Diego County, California.

2. Plaintiff Edward Li ("Li") is an individual residing in San Diego County, California.

3. Plaintiff Tim Barnard ("Barnard") is an individual residing in San Diego County, California.

4. Plaintiff Kenneth Curtis ("Curtis") is an individual residing in San Diego County, California.

5. Plaintiff Lia Johnson ("Johnson") is an individual residing in San Diego County, California.

6. Plaintiff John Abjanic ("Abjanic") is an individual residing in San Diego County, California.

7. Plaintiff Arnold Cares ("Cares") is an individual residing in San Diego County, California.

8. Plaintiffs are informed and believe and thereon allege that defendant Zacks Investment Research, Inc. ("ZIR") is an Illinois corporation that does business in San Diego County.

9. Kerr is informed and believes and thereon alleges that defendant National Marketing Resources, LLC ("NMR"), formerly identified as fictitious defendant DOE 1, is a limited liability company organized under the laws of Missouri that does business in San Diego County.

10. Kerr is informed and believes and thereon alleges that defendant Paradigm Direct LLC ("Paradigm"), formerly identified as fictitious defendant DOE 2, is a limited liability company organized under the laws of Delaware that does business in San Diego County.

11. Kerr is informed and believes and thereon alleges that NMR is owned or otherwise controlled by Paradigm, or *vice versa*, or that such entities have a

shared identity or have such a unity of interest that each entity is the same as, or an alter ego and/or agent of, the other.  When the term "National Marketing Resources" is entered into the Google search engine, the first returned link is for the website of Paradigm Direct, paradigmdirect.com, with a notation that Paradigm Direct was "[f]ounded in 1996 and formerly known as National Marketing Resources …" Further, the LinkedIn profile of National Marketing Resources states that "National Marketing Resources has rebranded.  We are now Paradigm Direct.  Check us out at http://paradigmdirect.com."

12. Kerr is informed and believes and thereon alleges that defendant Response North, LLC ("Response North"), formerly identified as fictitious defendant DOE 4, is a limited liability company organized under the laws of Utah that does business in San Diego County.

13. Li, Barnard, Curtis, Johnson, Abjanic, and Cares are informed and believe and thereon allege that defendant Zacks Investment Management, Inc. ("ZIM"), formerly identified as fictitious defendant DOE 5, is an Illinois corporation that does business in San Diego County, and is a wholly-owned subsidiary of ZIR. Li, Barnard, Curtis, Johnson, Abjanic, and Cares are informed and believe and thereon allege that ZIM and ZIR have such a unity of interest that each entity is the same as, or an alter ego and/or agent of, the other, and that ZIR approved, directed, participated in, and ratified the actions of ZIM alleged herein.

14. Plaintiffs do not know the names of the defendants sued as DOES 6 through 50 but will amend this complaint when that information becomes known. Plaintiffs allege on information and belief that each of the defendants identified herein as DOES 6-50 is affiliated with one or more of the named defendants in some respect and is in some manner responsible for the wrongdoing alleged herein, either as a direct participant, or as the principal, agent, successor, alter ego, or co-conspirator of or with another defendant.  For ease of reference, plaintiffs will refer to the named defendants and the DOE defendants collectively as "defendants."

15. Venue is proper in this Court because the complained of conduct occurred in San Diego County.

16. This Court has jurisdiction over this action pursuant to the Notice of Removal filed on June 3, 2016 (Dkt. 1).

## TCPA — GENERAL ALLEGATIONS

17. Kerr is informed and believes and thereon alleges that, within the limitations period, Kerr received a telephone call on his cellular telephone from Response North, as an agent of ZIR, NMR, and/or Paradigm. The background of Kerr's call and the basis of the agency allegation is set forth below.

18. On or about December 15, 2015, Kerr saw a television commercial that advertised a book entitled "How to Consistently Beat the Market," which is published by defendant ZIR. The television commercial was similar in form and content to the commercial available for viewing at https://www.ispot.tv/ad/7_OA/zacks-investment-research-how-to-consistently-beat-the-market, an exemplar opening screenshot and transcript of which are attached hereto as Exhibit 1. On information and belief, the version of the television commercial that Kerr viewed displayed a toll-free telephone number, (800) 655-1590, which viewers were told they could call to order the book. Kerr called that telephone number and placed an order for the book, which Kerr subsequently received. A copy of the cover jacket of the book is attached hereto as Exhibit 2. Based on the content of the television commercial, the fact that the book was published by Zacks, and the content and context of the telephone call in which he ordered the book, Kerr believed he was placing the order directly with defendant ZIR.

19. On or about February 2, 2016, Kerr received a telephone call on his cell phone. Upon answering the call, Kerr was engaged in conversation by a sales representative. Based on Kerr's recollection, the representative said he was calling from Zacks; that he was aware that plaintiff had previously obtained the book "How

1 to Consistently Beat the Market," and that there were other Zacks products and services that would assist Kerr's understanding of the book. The representative attempted to persuade Kerr to buy such other Zacks products and services. Based on the recent transaction involving the book, the statement that the representative was calling from Zacks, the representative's knowledge of the prior transaction, the promotion of materials published by Zacks, and the general content and context of the call, Kerr believed this call was made to him by ZIR.

20. Subsequent to the filing of the original Complaint in this action, ZIR has asserted that the call to Kerr's cell phone on February 2, 2016 was not initiated by ZIR. Rather, ZIR contends the call was initiated by Response North, pursuant to some agreement or arrangement between Response North, on the one hand, and NMR and/or Paradigm, on the other hand.

21. On May 9, 2013, the Federal Communications Commission ("FCC") issued a Declaratory Ruling holding that common law agency principles can be applied so as to make a seller vicariously liable for a telemarketer's actions that violate the TCPA. *See* 28 FCC Rcd 6574 (2013). The FCC held that liability can be imposed on a seller for actions of a telemarketer that is an actual agent of the seller, or based on principles of agency law such as apparent authority or ratification. *See* 28 FCC Rcd 6574, 6586-93 (¶¶ 33-48). Among other things, the FCC held that apparent authority can be supported by evidence showing (among other things) that the seller allows an outside sales agency access to the seller's customer information; authority granted to the marketer to use the seller's trade name, trademark, or service mark; the right of the seller to review or approve telemarketing scripts; and/or information showing that the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA but failed to take effective steps within its power to force the telemarketer to cease that conduct. *See* 28 FCC Rcd 6574, 6592-93 (¶ 46). The FCC held that if consumers are not "independently privy" to such information, the information may be acquired "through discovery," and that the

5

seller has the burden of demonstrating "that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Ibid*.

22. Attached hereto as Exhibit 3 is a true and correct copy of a partially-redacted document entitled "Infomercial Production Letter of Intent," which was recently produced by ZIR as part of discovery in this action. The "Letter of Intent" recites that there was a "Strategic Partnership" between ZIR and NMR regarding a joint effort to "develop, implement, market and maintain an infomercial campaign ('Infomercial'), tentatively to be marketed as 'ZACKS Investing.'" Ex. 3 (preamble).

23. Kerr is informed and believes and thereon alleges that the book entitled "How to Consistently Beat the Market" and the television commercial Kerr viewed regarding the book were the product and result of the "Strategic Partnership" set forth in the Letter of Intent. *See* Ex. 3 at preamble and Section 2.1. Among other things, the Letter of Intent provides that NMR and ZIR shall "co-own" the database of "Infomercial Customers" (*id*. at Section 1.5); that ZIR grants NMR the right to use the infomercial products in all direct marketing channels (*id*. at Section 2.1); that ZIR has "creative sign off" on all monetization activities, including but not limited to "telesales" (*id*. at Section 1.5); that sales are contemplated to be made through one or more "call center[s]" (*id*. at Sections 1.6(a), 1.6(b), and 3.2); that the Strategic Partnership encompasses not only the marketing of the book itself, but also subsequent marketing of "Continuity Products" and "any upsells thereof" (*id*. at Section 5.1); and that ZIR shares in the proceeds through royalties (*ibid*.).

24. ZIR's Privacy Policy as published on its website, a copy of which is attached hereto as Exhibit 4, states that ZIR "rents" its "phone marketing lists" to "telemarket[ers]" and "controls the process through an agreement with … phone call centers … which handle[] telemarketing offers from Zacks Investment Research and its business partners." The Privacy Policy goes on to state that ZIR confirms that

1 "[o]utside marketers are only given the right to … call you … through a
2 telemarketing firm with [ZIR's] approval."

3    25.   Based on the foregoing, Kerr is informed and believes and thereon
4 alleges that the call to Kerr's cell phone on February 2, 2016 was initiated or caused
5 to be initiated by Response North, NMR and/or Paradigm, and further, to the extent
6 that any defendant did not itself initiate the call or cause the call to be initiated, each
7 entity that did initiate the call and each entity that caused the call to be initiated was
8 acting as an agent of each of the other defendants (including ZIR), or pursuant to
9 apparent authority of each of the other defendants (including ZIR), and/or the
10 conduct was ratified by each of the other defendants (including ZIR), so as to render
11 each defendant liable for the legal violation.  Consumers who viewed a television
12 commercial for the book entitled "How to Consistently Beat the Market," who made
13 a telephone call to order the book, and/or who received a telephone call offering for
14 sale Zacks products or services, would sensibly assume that such calls were made by
15 ZIR or, at the very least, by an authorized agent of ZIR.

16    26.   Li is informed and believes and thereon alleges that, within the
17 limitations period, Li received one or more telephone calls on his cellular telephone
18 that were initiated by ZIM, for itself and as agent of ZIR.

19    27.   Barnard is informed and believes and thereon alleges that, within the
20 limitations period, Barnard received one or more telephone calls on his cellular
21 telephone that were initiated by ZIM, for itself and on behalf of ZIR.

22    28.   Curtis is informed and believes and thereon alleges that, within the
23 limitations period, Curtis received one or more telephone calls on his cellular
24 telephone that were initiated by ZIM, for itself and as agent of ZIR.

25    29.   Johnson is informed and believes and thereon alleges that, within the
26 limitations period, Johnson received one or more telephone calls on her cellular
27 telephone that were initiated by ZIM, for itself and as agent of ZIR.

28

30. Abjanic is informed and believes and thereon alleges that, within the limitations period, Abjanic received one or more telephone calls on his cellular telephone that were initiated by ZIM, for itself and as agent of ZIR.

31. Cares is informed and believes and thereon alleges that, within the limitations period, Cares received one or more telephone calls on his cellular telephone that were initiated by ZIM, for itself and as agent of ZIR.

32. Within the telemarketing industry, it is common for telemarketers to utilize equipment to automate the step of telephone dialing. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 14022 (July 3, 2003). Use of such technology enables telemarketing employees to devote more time to selling rather than dialing phone numbers. Such technology can include equipment that has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers, and/or equipment that stores pre-programmed numbers or receives numbers from a computer database and then, for the sake of efficiency, dials those numbers in a manner that predicts the time when the called party will answer the phone and a telemarketer will be available to take the call (a "predictive dialer"). *See id*. at 14022, n.31, 14090-91. In either case, the basic function of such equipment is to dial numbers without human intervention, and a predictive dialer falls within the meaning and statutory definition of "automatic telephone dialing system" as set forth in 47 U.S.C. § 227(a)(1). *Id*. at 14091-93.

33. Attached hereto as Exhibit 5 is a true and correct copy of a website posting for the position of telemarketing manager at Zacks Investment Research, which was printed from https://jobs.livecareer.com/l/telemarketing-manager-investment-products-zacks-investment-75fecab2d5608ee7707521b02e91a520 (last accessed May 3, 2016). The posting indicates that candidates for that position should understand "automated dialing technology."

34. Plaintiffs Li, Barnard, Curtis, Johnson, Abjanic, and Cares are informed and believe and thereon allege that the calls they received on their cellular telephones were initiated by ZIM, for itself and as agent of ZIR, using equipment that has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers, and/or a predictive dialer, such that the call was initiated using an automatic telephone dialing system within the meaning of 47 U.S.C. § 227(a)(1).

35. Kerr is informed and believes and thereon alleges that the call Kerr received on his cellular telephone was initiated by Response North, for itself and on behalf of ZIR, NMR, and/or Paradigm, using equipment that has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers, and/or a predictive dialer, such that the call was initiated using an automatic telephone dialing system within the meaning of 47 U.S.C. § 227(a)(1).

36. For purposes of the Telephone Consumer Protection Act ("TCPA"), the term "advertisement" means "any material advertising the commercial availability or quality of any property, goods, or services."  47 C.F.R. § 64.1200(f)(1).

37. For purposes of the TCPA, the term "telemarketing" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

38. Plaintiffs are informed and believe and thereon allege that the telephone calls to plaintiffs' cellular telephones were initiated by defendants for the purpose of informing plaintiffs about the commercial availability of products or services (including but not limited to products or services offered by ZIR and/or ZIM) and encouraging plaintiffs to purchase those products or services.  As such, the calls constituted "advertisement" and "telemarketing."

39. 47 C.F.R. § 64.1200(a)(2) requires that before using an automatic telephone dialing system to initiate (or cause to be initiated) an advertisement or telemarketing call to a cellular telephone, the calling party must obtain the "prior express written consent" of the called party. For this purpose, as set forth in 47 C.F.R. § 64.1200(f)(8), the term "prior express written consent" means:

> [A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.
>
> (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:
>
>> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>>
>> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.
>
> (ii) The term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

40. Kerr did not provide prior express written consent authorizing Response North, ZIR, NMR, Paradigm, or any other person or entity acting for, on behalf of, or with apparent authority of any of them, to place advertising or telemarketing calls to Kerr's cell phone. Accordingly, the call to Kerr was initiated in violation of 47 U.S.C. § 227(b)(1) and 47 C.F.R. § 64.1200(a)(2).

41. Li, Barnard, Curtis, Johnson, Abjanic, and Cares did not provide prior express consent—or, when required by the TCPA, prior express written consent—authorizing ZIM or ZIR, or any other person or entity acting for, on behalf of, or with apparent authority of ZIM or ZIR, to place advertising or telemarketing calls to their respective cell phones. Accordingly, the calls to them were initiated in violation of 47 U.S.C. § 227(b)(1) and 47 C.F.R. § 64.1200(a)(2).

## PRIVACY ACT — GENERAL ALLEGATIONS

42. California Penal Code § 632 prohibits the recording of confidential communications made by telephone without the consent of all parties to the communication. California Penal Code § 632.7 prohibits the recording of any communication without the consent of all parties where one of the parties to the communication is using a cellular or cordless telephone.

43. At the time Kerr received the follow-up call from the sales representative, Kerr resided in and was physically present in the State of California, and was using a cellular telephone. Kerr alleges that Response North recorded that communication without notifying Kerr that the communication was being recorded and without obtaining Kerr's consent.

## CLASS ACTION ALLEGATIONS

44. Plaintiffs bring this lawsuit as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of three classes: (1) the "Response North TCPA Class"; (2) the "Response North Privacy Class"; and (3) the "Zacks Class."

45. The Response North TCPA Class is defined as follows: "All natural persons nationwide who received from Response North a telephone call reflected in contact databases produced by Response North, which (1) was placed as part of the Zacks Book Campaign and/or the Options Trading Campaign and (2) was received on a cellular telephone. Excluded from the Response North TCPA Class are all employees of Response North, all employees of Response North's counsel, all employees of plaintiffs' counsel, and judicial officers, their family members, and court staff assigned to the lawsuit."

46. The Response North Privacy Class is defined as follows: "All California residents who received from Response North a telephone call reflected in contact databases produced by Response North, which (1) was made on a telephone line that was subject to recording by Response North and (2) was received by the

recipient in the State of California. Excluded from the Response North Privacy Class are all employees of Response North, all employees of Response North's counsel, all employees of plaintiffs' counsel, and judicial officers, their family members, and court staff assigned to the lawsuit."

47. The Zacks Class is defined as follows: "All natural persons nationwide who, between and including May 6, 2012 and June 30, 2017, received a telephone call that was (1) made to their cellular telephone and (2) initiated by or on behalf of ZIM or ZIR using an automatic telephone dialing system. Excluded from the Zacks Class are all employees of defendants, all employees of defendants' counsel, all employees of plaintiffs' counsel, and judicial officers, their family members, and court staff assigned to the lawsuit."

48. <u>Ascertainability.</u> The members of each Class may be ascertained by reviewing records in the possession of defendants and/or third parties, including without limitation defendants' call records, customer records, call lists, and audio recordings.

49. <u>Common Questions of Fact or Law.</u> There are questions of fact or law that are common to the members of each Class which predominate over individual issues. Common questions regarding the Response North TCPA Class include, without limitation: (1) Response North's policies and procedures for obtaining prior express consent—or, when required by the TCPA, prior express written consent—from customers or potential customers to place advertisement or telemarketing calls to their cellular telephones; (2) what type of telephone dialing system Response North used to initiate calls to cellular telephones; (3) whether the relationships between and among Response North, ZIR, NMR, and/or Paradigm constituted an agency relationship or gives rise to vicarious liability for such calls based on principles of apparent authority and/or ratification; (4) whether Response North's telephone calls constituted an "advertisement" as defined in 47 C.F.R. § 64.1200(f)(1) and/or "telemarketing" as defined in 47 C.F.R. § 64.1200(f)(12);

(5) defendants' record-keeping practices; and (6) the appropriate remedies for defendants' conduct. Common questions regarding the Response North Privacy Class include, without limitation: (1) the policies and procedures of Response North for recording telephone communications with customers or potential customers in California; (2) whether Response North notified customers or potential customers that telephone calls with those entities are recorded; (3) whether the conduct of Response North, ZIR, NMR, and/or Paradigm constitutes a violation of Cal. Penal Code § 632 and/or § 632.7; (4) the record-keeping practices of Response North; and (5) the appropriate remedies. Common questions regarding the Zacks Class include, without limitation: (1) the policies and procedures of ZIM and/or ZIR for obtaining prior express consent—or, when required by the TCPA, prior express written consent—from customers or potential customers to place advertisement or telemarketing calls to their cellular telephones; (2) what type of telephone dialing system ZIM used to initiate calls to cellular telephones; (3) whether the relationship between ZIM and ZIR constituted an agency relationship or gives rise to vicarious liability for such calls based on principles of apparent authority and/or ratification; (4) whether ZIM's telephone calls constituted an "advertisement" as defined in 47 C.F.R. § 64.1200(f)(1) and/or "telemarketing" as defined in 47 C.F.R. § 64.1200(f)(12); (5) the record-keeping practices of ZIM and/or ZIR; and (6) the appropriate remedies for defendants' conduct.

50. <u>Numerosity.</u> Each Class is so numerous that joinder of all class members would be impracticable. Plaintiffs are informed and believe and thereon allege that each Class consists of at least 1,000 members.

51. <u>Typicality and Adequacy.</u> Plaintiffs' claims are typical of the claims of other members of each Class. Kerr alleges on information and belief that other members of the Response North TCPA Class also received one or more telemarketing calls to their cellular telephones that were initiated by Response North using an automatic telephone dialing system, without first providing the requisite

1  prior express consent, or prior express written consent, as required by the TCPA.
2  Kerr has no interests that are adverse to those of the other members of the Response
3  North TCPA Class.  Kerr will fairly and adequately protect the interests of the
4  Response North TCPA Class members.  Kerr alleges on information and belief that
5  other members of the Response North Privacy Class, while present in the State of
6  California, also participated in one or more telephone calls with Response North,
7  which communications were recorded by Response North without notification that
8  the calls would be recorded.  Kerr has no interests that are adverse to those of the
9  other Response North Privacy Class members.  Kerr will fairly and adequately
10 protect the interests of the Response North Privacy Class members.  Plaintiffs Li,
11 Barnard, Curtis, Johnson, Abjanic, and Cares allege on information and belief that
12 other members of the Zacks Class also received one or more telemarketing calls to
13 their cellular telephones that were initiated by ZIM using an automatic telephone
14 dialing system, without first providing the requisite prior express consent, or prior
15 express written consent, as required by the TCPA.  Li, Barnard, Curtis, Johnson,
16 Abjanic, and Cares have no interests that are adverse to those of the other members
17 of the Zacks Class.  Li, Barnard, Curtis, Johnson, Abjanic, and Cares will fairly and
18 adequately protect the interests of the Zacks Class members.

19       52.   <u>Superiority</u>.  A class action is superior to other methods for resolving
20 this controversy.  Because the damages suffered by each member of the Response
21 North TCPA Class, the Response North Privacy Class, and the Zacks Class are low,
22 the expense and burden of individual litigation would make it impracticable for
23 members of each class to redress the wrongs done to them.  Furthermore, on
24 information and belief, the members of the Response North Privacy Class do not
25 know that their rights have been violated.  Class certification would also conserve
26 judicial resources and avoid the possibility of inconsistent judgments.

## FIRST CAUSE OF ACTION

(Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227)

(By Kerr Against Response North, ZIR, NMR, Paradigm, and DOES 6-10)

53. Kerr incorporates by reference paragraphs 1-41 and 44-52 as if set forth herein.

54. Within the limitations period, and without first obtaining the prior express consent (or when required by the TCPA, prior express written consent) of Kerr or the Response North TCPA Class members, Response North initiated telephone calls to Kerr's and the Response North TCPA Class members' cellular telephones using an automatic telephone dialing system, in violation of 47 U.S.C. § 227(b) and 47 C.F.R. § 64.1200(a)(2).

55. Kerr alleges that the telephone calls were initiated by Response North, for itself and on behalf of ZIR, NMR, and/or Paradigm, for the purposes of informing Kerr and Response North TCPA Class members about the commercial availability of products or services and encouraging Kerr and the Response North TCPA Class members to purchase products or services. As such, each call constituted an "advertisement" as defined in 47 C.F.R. § 64.1200(f)(1) and "telemarketing" as defined in 47 C.F.R. § 64.1200(f)(12).

56. Kerr is informed and believes and thereon alleges that the telephone calls to Kerr's and the Response North TCPA Class members' cellular telephones were made by Response North knowingly and willfully.

57. As a result of the foregoing conduct, Kerr and the Response North TCPA Class members are entitled to injunctive relief pursuant to 47 U.S.C. § 227(b)(3)(A) and statutory damages of at least $500 per violation and up to $1,500 per violation pursuant to 47 U.S.C. § 227(b)(3).

## SECOND CAUSE OF ACTION

(Violation of the California Invasion of Privacy Act)

(By Kerr Against Response North, ZIR, NMR, Paradigm, and DOES 11-30)

58. Kerr incorporates by reference paragraphs 1-16 and 42-52 as if set forth herein.

59. While Kerr and the Response North Privacy Class members were residing in and physically present in the State of California, they participated in telephone calls received from a live representative of Response North, which communications were recorded without the consent of Kerr and the Response North Privacy Class members. Response North did not notify Kerr and the Response North Privacy Class members that the communications were being recorded. Because the recording was surreptitious, any Response North Privacy Class member whose telephone call was recorded more than one year before the filing of the Complaint in this action could not reasonably have discovered the violation. Therefore, the discovery rule applies.

60. Kerr and other Response North Privacy Class members had an objectively reasonable expectation that their telephone communications were confidential and were not being recorded. There were no beeps, warnings, or recording disclosures played that would lead Kerr or Response North Privacy Class members to believe that their communications were being recorded.

61. To the extent the telephone calls to Kerr and the Response North Privacy Class members related to products or services of ZIR, including but not limited to the book "How to Consistently Beat the Market," Response North recorded the calls pursuant to and in furtherance of the Strategic Partnership described in the Letter of Intent, and with the knowledge of, for the benefit of, and as the actual or ostensible agent of ZIR, NMR, and/or Paradigm.

62. By the foregoing conduct, Response North, ZIR, NMR, and Paradigm violated California Penal Code § 632, which prohibits the recording of confidential

communications made by telephone without the consent of all parties to the communication, and California Penal Code § 632.7, which prohibits the recording of any communication without the consent of all parties where one of the parties to the communication is using a cellular or cordless telephone.

63. As a result of the conduct of Response North, ZIR, NMR, and Paradigm, Kerr and the Response North Privacy Class members have been injured. Accordingly, Kerr and the Response North Privacy Class members are entitled to statutory damages of $5,000 per recorded communication pursuant to Cal. Penal Code § 637.2(a), and injunctive relief to halt the secret recording of communications pursuant to Cal. Penal Code § 637.2(b).

### THIRD CAUSE OF ACTION
(Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227)
(By Li, Barnard, Curtis, Johnson, Abjanic, and Cares
Against ZIM, ZIR, and DOES 21-40)

64. Li, Barnard, Curtis, Johnson, Abjanic, and Cares incorporate by reference paragraphs 1-41 and 44-52 as if set forth herein.

65. Li, Barnard, Curtis, Johnson, Abjanic, and Cares allege that, within the limitations period, and without first obtaining the prior express consent (or when required by the TCPA, prior express written consent) of Li, Barnard, Curtis, Johnson, Abjanic, Cares, or the Zacks Class members, ZIR and/or ZIM initiated telephone calls to their respective cellular telephones using an automatic telephone dialing system, in violation of 47 U.S.C. § 227(b) and 47 C.F.R. § 64.1200(a)(2).

66. Li, Barnard, Curtis, Johnson, Abjanic, and Cares allege that the telephone calls were initiated by ZIR and/or ZIM for the purposes of informing Li, Barnard, Curtis, Johnson, Abjanic, Cares, and the Zacks Class members about the commercial availability of products or services and encouraging Li, Barnard, Curtis, Johnson, Abjanic, Cares, and the Zacks Class members to purchase products or

services. As such, each call constituted an "advertisement" as defined in 47 C.F.R. § 64.1200(f)(1) and "telemarketing" as defined in 47 C.F.R. § 64.1200(f)(12).

67. Li, Barnard, Curtis, Johnson, Abjanic, and Cares are informed and believe and thereon allege that the telephone calls to their cellular telephones, and to the Zacks Class members' cellular telephones, were made by ZIR and/or ZIM knowingly and willfully.

68. As a result of the foregoing conduct, Li, Barnard, Curtis, Johnson, Abjanic, Cares, and the Zacks Class members are entitled to injunctive relief pursuant to 47 U.S.C. § 227(b)(3)(A) and statutory damages of at least $500 per violation and up to $1,500 per violation pursuant to 47 U.S.C. § 227(b)(3).

## PRAYER

WHEREFORE, plaintiffs pray for judgment against defendants as follows:

1. For statutory damages as alleged herein;
2. For injunctive relief as alleged herein;
3. For reasonable attorneys' fees;
4. For costs of suit;
5. For pre-judgment interest; and
6. For such other relief that the Court deems proper.

Dated: September 26, 2017         DOSTART HANNINK & COVENEY LLP


                                  /s/ Zach P. Dostart
                                  ZACH P. DOSTART
                                  Attorneys for Plaintiffs
                                  Email: zdostart@sdlaw.com

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all claims so triable.

Dated: September 26, 2017          DOSTART HANNINK & COVENEY LLP


/s/ Zach P. Dostart
ZACH P. DOSTART
Attorneys for Plaintiffs
Email: zdostart@sdlaw.com

815551.4