JAMES T. HANNINK (131747)
jhannink@sdlaw.com
ZACH P. DOSTART (255071)
zdostart@sdlaw.com
DOSTART HANNINK & COVENEY LLP
4180 La Jolla Village Drive, Suite 530
La Jolla, California 92037-1474
Tel:  858-623-4200
Fax: 858-623-4299

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN KERR, EDWARD LI, TIM BARNARD, KENNETH CURTIS, LIA JOHNSON, JOHN ABJANIC, and ARNOLD CARES, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>ZACKS INVESTMENT RESEARCH, INC., an Illinois corporation, NATIONAL MARKETING RESOURCES, LLC, a Missouri limited liability company; PARADIGM DIRECT LLC, a Delaware limited liability company; RESPONSE NORTH, LLC, a Utah limited liability company; ZACKS INVESTMENT MANAGEMENT, INC. an Illinois corporation; and DOES 6-50, inclusive,<br><br>      Defendants. | CASE NO. 16-CV-01352 GPC BLM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT**<br><br>Date:  April 6, 2018<br>Time:  1:30 p.m.<br>Crtrm.: 2D (2nd Floor - Schwartz)<br>Judge:  Hon. Gonzalo P. Curiel |

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION .................................................................................. 1

II.     SUMMARY OF THE TCPA AND THE PRIVACY ACT ............................ 1

    A.      TCPA .......................................................................................... 1

    B.      Privacy Act ................................................................................ 2

III.    FACTUAL BACKGROUND .................................................................. 2

    A.      Facts Giving Rise to this Lawsuit ............................................ 2

    B.      The Litigation ............................................................................ 3

IV.     SUMMARY OF SETTLEMENT ADMINISTRATION TO DATE ............... 7

V.      THE SETTLEMENT WARRANTS FINAL APPROVAL ........................... 10

    A.      The Strength of Plaintiffs' Claims and the Risks and Expense of Further Litigation ................................................................. 12

    B.      The Settlement Amount .......................................................... 14

    C.      The Extent of Discovery Completed and Stage of the Proceedings ............................................................................. 15

    D.      The Experience and Views of Counsel ................................... 15

    E.      The Presence of a Governmental Participant ........................ 15

    F.      The Reaction of the Class to the Settlement ......................... 16

    G.      There Was No Collusion ......................................................... 16

VI.     CONCLUSION .................................................................................. 17

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Adams v. AllianceOne*,
  No. 08-cv-0248, (S.D. Cal. Sept. 28, 2012) ........................................ 15

*Ades v. Omni Hotels Mgmt. Corp.*,
  2014 U.S. Dist. LEXIS 129689 (C.D. Cal. Sept. 8, 2014) .................................. 14

*Churchill Village, L.L.C. v. General Electric*,
  361 F.3d 566 (9th Cir. 2003) ............................................. 16

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ............................................. 10

*Connelly v. Hilton Grand Vacations Co., LLC*,
  294 F.R.D. 574 (S.D. Cal. Oct. 29, 2013) ............................................. 13

*Couser v. Comenity Bank*,
  125 F. Supp. 3d 1034 (S.D. Cal. May 27, 2015) ........................................... 15, 16

*Franklin v. Kaypro Corp.*,
  884 F.2d 1222 (9th Cir. 1989) ............................................. 10

*Franklin v. Wells Fargo Bank, N.A.*,
  2016 U.S. Dist. LEXIS 13696 (S.D. Cal. Jan. 29, 2016) .................................... 13

*Gannon v. Network Tel. Servs., Inc.*,
  2013 U.S. Dist. LEXIS 81250 (C.D. Cal. Jun. 5, 2013) .................................... 13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................. 12

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ............................................. 11

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ............................................. 16

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ............................................. 11

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

*Quesada v. Bank of Am. Inv. Servs.*,
    2013 U.S. Dist. LEXIS 32588 (N.D. Cal. Feb. 19, 2013) ................................... 13

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ................................................................. 12

*Sommers v. Abraham Lincoln Fed. Sav. & Loan Ass'n*,
    79 F.R.D. 571 (E.D. Pa. 1978) ............................................................. 16

*Torres v. Nutrisystem, Inc.*,
    2013 U.S. Dist. LEXIS 66444 (C.D. Cal. Apr. 8, 2013) ................................... 13

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ................................................................. 12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................. 11

**California Cases**

*Hataishi v. First Am. Home Buyers Prot. Corp.*,
    223 Cal. App. 4th 1454 (2014) ............................................................. 13

*Kight v. CashCall, Inc.*,
    231 Cal. App. 4th 112 (2014) ............................................................. 13

**Federal Statutes**

47 U.S.C.
    § 227(a)(1) ................................................................................. 12
    § 227(b)(1)(A) ............................................................................... 2
    § 227(b)(3) ................................................................................... 2

iii

# I.   INTRODUCTION

Plaintiffs and Class Counsel successfully negotiated a $5.48 million, non-reversionary cash settlement to resolve the TCPA and Privacy Act claims asserted in this action.[1]  Following preliminary approval of the settlement and dissemination of class notice, class members have now had the opportunity to file claims to participate in the settlement, to object, or opt out.

The response of class members demonstrates strong support for the settlement.  As explained in more detail below, the Settlement Administrator has to date received a total of 30,622 claims that are likely to be validated upon the completion of the claims process.  An update with final claim figures will be provided to the Court prior to the Final Approval Hearing.

Measured against the 293,968 individuals to whom notice was sent, the overall claims rate is about 10.5%.  Only 19 individuals timely requested exclusion, so the opt-out rate is a miniscule 0.006%.  **Zero** objections were filed.  Based on all pertinent factors, the settlement should be given final approval.

# II.   SUMMARY OF THE TCPA AND THE PRIVACY ACT

## A.   TCPA

Enacted in 1991, the TCPA protects consumers from unwanted telephone solicitations.  Among other things, the TCPA prohibits anyone from placing calls to a cellular telephone using an automatic telephone dialing system ("ATDS") without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).  Further, 47 C.F.R. § 64.1200(a)(2) requires that before using an ATDS to initiate a telemarketing call to a cellular telephone, the calling party must obtain the recipient's prior express written consent.  Violation of the TCPA gives rise to a private right of action for injunctive relief and statutory damages of $500 per violation (which may be

---

[1] A copy of the Settlement Agreement is in the court record as Docket No. 108-3.

increased to $1,500 for willful violations).  47 U.S.C. § 227(b)(3).

### B. Privacy Act

Enacted in 1967, the Privacy Act protects the right of privacy of the people of the State of California by prohibiting the recording of confidential communications made by telephone without the consent of all parties, and by prohibiting the recording of any communication without the consent of all parties where one of the parties is using a cellular or cordless telephone.  Cal. Penal Code §§ 632, 632.7. Violation of the Privacy Act gives rise to a private right of action for injunctive relief and statutory damages of $5,000 per violation.  Cal. Penal Code § 637.2.

## III. FACTUAL BACKGROUND

### A. Facts Giving Rise to this Lawsuit

In December 2015, Kerr saw a television commercial that advertised a book entitled "How to Consistently Beat the Market," which was published by Zacks Investment Research, Inc. ("ZIR").[2]  Kerr called the telephone number displayed on the commercial and placed an order for the book, which Kerr subsequently received.

In February 2016, Kerr received a telephone call on his cell phone.  Upon answering the call, Kerr was engaged in conversation by a sales representative who said he was calling from Zacks; that he was aware that Kerr had previously obtained the book "How to Consistently Beat the Market"; and that there were other Zacks products and services that would assist Kerr's understanding of the book.  The representative attempted to persuade Kerr to buy other Zacks products and services.

Following receipt of that telephone call, Kerr approached counsel and provided a description of the events that had transpired.  After further factual investigation and legal analysis, this Litigation ensued.

---

[2] An affiliate of ZIR, Zacks Investment Management, Inc. ("ZIM") is also a defendant.  ZIR and ZIM are sometimes referred to collectively as "Zacks."

### B.     The Litigation

Kerr's initial complaint was filed on May 6, 2016 in the San Diego County Superior Court.  Dkt. No. 1-2.  The initial complaint alleged that ZIR or its agents placed telephone calls in violation of the TCPA, and recorded certain telephone calls with California residents in violation of the Privacy Act.  On June 3, 2016, ZIR removed the action to this Court (Dkt. No. 1) and filed an Answer (Dkt. No. 2).

On July 19, 2016, Kerr and ZIR participated in an Early Neutral Evaluation conference with United States Magistrate Judge Barbara L. Major.  The case did not settle, so Magistrate Judge Major issued a scheduling order.  Dkt. No. 18.

Discovery commenced on July 19, 2016.  Kerr served interrogatories and requests for production on ZIR, and ZIR likewise served interrogatories and requests for production on Kerr.  Dostart Decl. ¶ 5.  During the course of initial discovery, ZIR produced information and documents indicating that the call to Kerr was made by Response North, LLC pursuant to a "Strategic Partnership" agreement between ZIR and National Marketing Resources, LLC ("NMR") regarding the promotion and sale of ZIR's books and materials.  *See* Dkt. No. 24-3.  On September 1, 2016, Kerr filed a Motion for Leave to File a First Amended Complaint, which proposed to name Response North, NMR, and Paradigm Direct, LLC (an affiliate of NMR) in the place of fictitious defendants.  Dkt. No. 19.  In addition, the proposed FAC sought to add Edward Li, Tim Barnard, and Kenneth Curtis as named plaintiffs for a direct-liability claim against ZIR.  ZIR filed opposition to that motion on September 16, 2016 (Dkt. No. 21), and Kerr's reply was filed on September 23, 2016 (Dkt. No. 22).  The Court granted the motion on September 29, 2016 (Dkt. No. 23), and the FAC was filed on October 3, 2016 (Dkt. No. 24).

After the filing of the FAC, ZIR served interrogatories and requests for production on plaintiffs Li, Barnard, and Curtis.  Kerr served discovery on Response North and NMR/Paradigm.  Dostart Decl. ¶ 5.

1   In October 2016, ZIR, Response North, and NMR/Paradigm filed motions to
2   dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. Nos. 31, 35, 38.  Those
3   entities also filed motions to stay all proceedings in this action, based on the
4   argument that any judicial determination in this action should await the outcome of
5   an appeal pending before the Court of Appeals for the D.C. Circuit, *ACA*
6   *International v. FCC*, No. 15-1211.  Dkt. Nos. 30, 39, 43.

7   Discovery gave rise to a number of disputes.  The parties were able to resolve
8   many disputes informally, but some required Court intervention.  On October 13,
9   2016, counsel placed a joint call to Magistrate Judge Major to present their
10  disagreement concerning Plaintiffs' Requests for Production Nos. 38 and 79-86.
11  Dostart Decl. ¶ 6; Dkt. No. 29.  Pursuant to Judge Major's order, on October 21,
12  2016, Kerr filed a motion seeking to compel ZIR to produce responsive documents.
13  Dkt. No. 33.  ZIR filed its opposition on October 28, 2016.  Dkt. No. 47.

14  On October 21, 2016, counsel again placed a joint call to Magistrate Judge
15  Major to present their disputes regarding (i) whether Plaintiffs could take the
16  depositions of Kevin Matras and Phil Smith to support Plaintiffs' oppositions to
17  ZIR's pending motions to dismiss and to stay the action, and (ii) ZIR's proposed
18  motion to stay discovery pending a ruling on its motion to stay the proceedings.
19  Dostart Decl. ¶ 6; Dkt. No. 34.  Pursuant to the ensuing Court order, Kerr and ZIR
20  filed letter briefs on October 28, 2016.  Dkt. Nos. 44, 46.  On October 31, 2016,
21  Magistrate Judge Major granted Plaintiffs' motion to compel the depositions of
22  Kevin Matras and Phil Smith.  Dkt. No. 49.

23  At that point the Parties agreed to participate in mediation.  On November 2,
24  2016, the Parties filed a joint motion to stay proceedings and continue the hearing
25  dates pending mediation, which the Court granted.  Dkt. No. 51.  On November 3,
26  2016, Magistrate Judge Major issued an order denying as moot ZIR's motion to stay
27  discovery and denying without prejudice Plaintiffs' motion to compel.  Dkt. No. 52.

28

1    On January 13, 2017, the Parties attended a mediation session before Judge

2 Papas.   Dostart Decl. ¶ 7.   Although the mediation did not result in a settlement,

3 Judge Papas indicated that significant progress had been made and he encouraged

4 the Parties to agree to a further informal exchange of information as a prelude to a

5 second day of mediation.  *Id*.  On February 28, 2017, the Parties filed a joint motion

6 to extend the stay for mediation, which was granted on March 1, 2017.  Dkt. No. 59.

7 The second mediation session was held on April 7, 2017, but it too ended without a

8 settlement.  Dostart Decl. ¶ 7.  As a result, discovery moved forward.

9    On April 18, 2017, Plaintiffs' counsel took the deposition of Kevin Matras,

10 Vice President of ZIR.   Dostart Decl. ¶ 8.   That deposition produced information

11 from which Plaintiffs' counsel concluded that ZIM could bear responsibility for the

12 direct-liability TCPA claim previously asserted only against ZIR.  *Id*.  On April 21,

13 2017, the Parties filed a joint motion authorizing Plaintiffs to file a Second

14 Amended Complaint, to name ZIM in the place of a fictitious defendant.   Dkt.

15 No. 63.  The Court granted that motion on April 21, 2017.  Dkt. No. 64.  Plaintiffs

16 filed the SAC on April 27, 2017.  Dkt. No. 65.  In view of the filing of the SAC, on

17 May 1, 2017, the Parties filed a joint motion to withdraw the pending motions to

18 stay, and to extend Defendants' deadline to respond to the SAC.  Dkt. No. 68.  The

19 Court granted that motion on May 2, 2017.  Dkt. No. 69.

20    On June 2, 2017, Response North filed its Answer to the SAC.  Dkt. No. 82.

21 Also on June 2, 2017, ZIR and NMR/Paradigm filed motions to dismiss the SAC

22 and to stay proceedings.  Dkt. Nos. 80, 81, 83, 84, and 85.  On June 27, 2017, ZIM

23 likewise filed a motion to dismiss.  Dkt. No. 91.  Plaintiffs filed oppositions to the

24 ZIR and NMR/Paradigm motions on June 30, 2017 (Dkt. Nos. 93, 94, 95), and filed

25 opposition to the ZIM motion on July 14, 2017 (Dkt. No. 99).  ZIR filed its reply

26 briefs on July 14, 2017 (Dkt. Nos. 100, 101), and ZIM filed its reply brief on July

27 28, 2017 (Dkt. No. 102).

28

While that briefing was underway, the Parties continued to explore the potential for settlement with the assistance of Judge Papas. Following back-and-forth negotiations, Judge Papas made a mediator's proposal, which all Parties accepted. Dostart Decl. ¶ 9. On August 10, 2017, the Parties informed the Court of the Settlement. Dkt. No. 104.

The mediator's proposal contemplated that Plaintiffs could take additional discovery to confirm representations made in the context of mediation. Plaintiffs requested and obtained additional documents from both Zacks and Response North. Dostart Decl. ¶ 10. Plaintiffs also took the depositions of Frank C. Lanza, Chief Compliance Officer & Chief Operating Officer of ZIM, and Phil Smith, Manager of Response North. *Id.* The Parties then finalized and signed the Settlement Agreement. Pursuant to the settlement terms, a Third Amended Complaint was filed on September 26, 2017, which among other things formally added Lia Johnson, John Abjanic, and Arnold Cares as named plaintiffs.

Plaintiffs filed their motion for preliminary approval on September 25, 2017. Dkt. No. 108. On October 2, 2017, defense counsel sent to the U.S. Department of Justice and to the appropriate State officials the CAFA notice required by 28 U.S.C. § 1715. Dostart Decl. ¶ 13 and Ex. 1. On November 17, 2017, the Court preliminarily approved the settlement and certified three settlement classes. The "Zacks Class" is defined as follows:

> All natural persons nationwide who, between and including May 6, 2012 and June 30, 2017, received a telephone call that was (1) made to their cellular telephone and (2) initiated by or on behalf of ZIR or ZIM using an automatic telephone dialing system. Excluded from the Zacks Class are all employees of defendants, all employees of defendants' counsel, all employees of plaintiffs' counsel, and judicial officers, their family members, and court staff assigned to the Lawsuit.

The "Response North TCPA Class" is defined as follows:

> All natural persons nationwide who received from Response North a telephone call reflected in contact databases produced by Response North, which (1) was placed as part of the Zacks Book Campaign and/or the Options Trading Campaign and (2) was received on a cellular telephone. Excluded from the Response North TCPA Class are

6

all employees of Response North, all employees of Response North's counsel, all employees of plaintiffs' counsel, and judicial officers, their family members, and court staff assigned to the Lawsuit.

The "Response North Privacy Class" is defined as follows:

All California residents who received from Response North a telephone call reflected in contact databases produced by Response North, which (1) was made on a telephone line that was subject to recording by Response North and (2) was received by the recipient in the State of California. Excluded from the Response North Privacy Class are all employees of Response North, all employees of Response North's counsel, all employees of plaintiffs' counsel, and judicial officers, their family members, and court staff assigned to the Lawsuit.

Dkt. No. 116 (the "Preliminary Approval Order"). The Court also appointed the named plaintiffs as the class representatives, Dostart Hannink & Coveney LLP as Class Counsel, and CPT Group, Inc. as the Settlement Administrator.

## IV.    SUMMARY OF SETTLEMENT ADMINISTRATION TO DATE

The steps taken thus far to implement the settlement, and further steps that will be taken upon final approval, are as follows:

1.    The Settlement Administrator established an interest-bearing account to receive initial settlement deposits. On November 28, 2017, $250,000 was deposited on behalf of Zacks. On November 30, 2017, $200,000 was deposited on behalf of Response North. Morales Decl. ¶ 2.

2.    The Settlement Administrator received class member name and contact information in the form of the Zacks Database and the Response North Database. Morales Decl. ¶ 3.

3.    In accordance with the Preliminary Approval Order, multiple forms of notice have been provided. On December 18, 2017, the Settlement Administrator disseminated the pertinent summary class notice via email to each class member whose email address appeared in the Zacks Database or the Response North Database. For class members whose email address was not available from those business records, or as to whom the email generated a bounce-back message, the Settlement Administrator distributed the pertinent summary class notice via first-

class U.S. mail.  Before mailing, the Settlement Administrator used the U.S. Postal Service's National Change of Address ("NCOA") database to update the address information in the Zacks Database and the Response North Database.  In accordance with the Preliminary Approval Order, notice was also published on three occasions in the *Wall Street Journal*.  The Settlement Administrator also sent reminder follow-up notice by both mail and email.  The Settlement Administrator also established a website, www.kerrvzirsettlement.com, which went "live" on December 18, 2017. The website contains information about the class action and links to important documents, including the Settlement Agreement, the long-form Class Notice, Claim Forms, and the Court's Order Granting Preliminary Approval.  The website permits class members to view, download, and print pertinent documents, and also enables the electronic submission of Claim Forms for known class members.  Class members could also submit completed Claim Forms to the Settlement Administrator by mail.  Morales Decl. ¶¶ 5-8.

4.   In addition to the foregoing, the Settlement Administrator established a toll-free telephone number for this settlement, 1-888-202-1727, which went live on December 18, 2017.  By calling the toll-free number, class members could either leave a message or speak with a live person to answer questions or provide information about the settlement.  Morales Decl. ¶ 9.

5.   On February 8, 2018, consistent with the Settlement Agreement, Class Counsel filed a noticed motion requesting an award of attorneys' fees in the amount of $1,370,000, reimbursement of out-of-pocket litigation expenses in the amount of $50,166.79, and service awards to the class representatives in the aggregate amount of $29,500.  Dkt. No. 117.

6.   The deadline for filing claims, objecting to the settlement, or opting out was February 16, 2018.  Dkt. No. 116 at 8.  On an aggregate basis, as of March 9, 2018, the Settlement Administrator received a total of 31,062 unique claims.  Of those, 440 are from individuals who are not listed in either the Zacks Database or

1  the Response North Database (analysis of those claims is ongoing).  Morales Decl. ¶

2  13.  Subtracting those 440 claims leaves a net of 30,622 claims by identified class

3  members.

4        7.     Of those 30,622 claims by identified class members, 258 have are

5  preliminarily deficient but potentially correctable (most deficiencies relate to

6  missing signatures).  Morales Decl. ¶ 14.  Of those 30,622 claims, 2,388 were

7  received between February 17, 2018 and March 9, 2018.  Class Counsel requests,

8  and the other parties have agreed, that as to those claims the filing deadline should

9  be waived and such claims be deemed timely.  The following discussion proceeds

10  on the basis that those claims are timely and that all deficiencies will be corrected,

11  such that the claims will be valid.

12        8.     On that basis, broken down by class, the current numbers of claims are

13  as follows:  26,396 for the Zacks Class; 1,220 for the Response North TCPA class;

14  2,803 for the Response North Privacy Class; and 203 for individuals who are

15  members of both the Response North TCPA Class and the Response North Privacy

16  Class.  Morales Decl. ¶ 14.

17        9.     The Settlement Administrator received 19 timely and valid requests for

18  exclusion ("opt-outs").  Morales Decl. ¶ 16 and Ex. 6.

19        10.    No objections have been filed with the Court or received by either the

20  Settlement Administrator or Class Counsel.  Morales Decl. ¶ 16; Dostart Decl. ¶ 14.

21        11.    Class Counsel will provide the Court an update including final claim

22  figures before the final approval hearing.

23        12.    Based on the absence of objections, the "Effective Date" of the

24  settlement will be the date on which the Court enters Judgment following final

25  approval of the settlement.  *See* Dkt. No. 108-3 at 6 (Agreement, Section II.A.4.(a)).

26        13.    Within ten (10) court days following the Effective Date, the balance of

27  the Zacks Monetary Consideration and the Response North Monetary Consideration

28  is to be transferred to the Settlement Administrator.  Dkt. No. 108-3 at 10-11

1    (Agreement, Section IV.A. & IV.B.).

2          14.    As soon as practical following the Effective Date, the Settlement

3    Administrator will pay the attorneys' fees, litigation expenses, and service payments

4    awarded by the Court.  Dkt. No. 108-3 at 12-13 (Agreement, Sections V & VI).

5          15.    Within 45 days following Effective Date, the Settlement Administrator

6    will mail to each participating class member a check representing the person's share

7    of the applicable Net Settlement Amount.[3]   Dkt. No. 108-3 at 21 (Agreement,

8    Section VIII.D.).

9          16.    If any settlement checks are uncashed after 120 days, the funds will be

10   distributed 50% each to the Court-approved *cy pres* recipients, Consumer Federation

11   of California and the National Consumer Law Center.   Dkt. No. 108-3 at 21

12   (Agreement, Section VIII.D.).

13   **V.     THE SETTLEMENT WARRANTS FINAL APPROVAL**

14         There is a strong judicial policy favoring settlements, particularly in complex

15   class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

16   1992).   The policy of the federal courts is to encourage settlement before trial.

17   *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989).   "Litigation

18   settlements offer parties and their counsel relief from the burdens and uncertainties

19   inherent in trial. … The economics of litigation are such that pretrial settlement may

_____

21   [3] Participating Zacks Class Members will receive a pro-rata portion of the Net Zacks
22   Settlement Fund.   Agreement, Section VIII.   Participating Response North Class
     Members will receive a share of the Net Response North Settlement Fund, as
23   follows:  Each Participating Response North TCPA Class Member will be credited
     with three (3) points, and each Participating Response North Privacy Class Member
24   will be credited with ten (10) points.  Thus, an individual who is a member of both
     the Response North TCPA Class and the Response North Privacy Class will be
25   credited with thirteen (13) points.  The Net Response North Settlement Amount will
     be allocated among the Participating Response North Class Members in proportion
26   to the number of points credited to all valid claims submitted by all Response North
     Class Members.  Agreement, Section VIII.  This allocation reflects the fact that the
27   maximum statutory award for a TCPA violation is $1,500, whereas the maximum
     statutory award for Privacy Act violation is $5,000 (*i.e.*, a 3 to 10 ratio).

28

1    be more advantageous for both sides than expending the time and resources

2    inevitably consumed in the trial process." *Id*.  The Ninth Circuit has recognized that

3    "the very essence of a settlement is compromise." *Officers for Justice v. Civil Serv.*

4    *Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).  "[I]t is the very uncertainty of outcome

5    in litigation and avoidance of wasteful and expensive litigation that induce

6    consensual settlements." *Id*. at 625.

7        The "universal standard" in evaluating the fairness of a settlement is whether

8    the settlement is "fundamentally fair, adequate and reasonable." *Officers for*

9    *Justice*, 688 F.2d at 625.  "[T]he court's intrusion upon what is otherwise a private

10   consensual agreement negotiated between the parties to a lawsuit must be limited to

11   the extent necessary to reach a reasoned judgment that the agreement is not the

12   product of fraud or overreaching by, or collusion between, the negotiating parties,

13   and that the settlement, taken as a whole, is fair, reasonable and adequate to all

14   concerned." *Id*.  The proposed settlement is not to be judged against a hypothetical

15   or speculative measure of what might have been achieved by the negotiators.

16   *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citing

17   *Officers for Justice*, 688 F.2d at 625).  Thus, even if the amount of a proposed

18   monetary settlement is a fraction of the potential recovery, that does not render the

19   settlement inadequate. *Linney*, 151 F.3d at 1242.

20       A settlement is presumed to be fair when: (i) it is reached through arm's-

21   length negotiations; (ii) the putative class is represented by experienced counsel; and

22   (iii) the parties have conducted sufficient discovery. *Wal-Mart Stores, Inc. v. Visa*

23   *U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  All of those factors are present in this

24   case.  The settlement is the product of arm's-length, non-collusive negotiations

25   overseen by a respected independent mediator (Dostart Decl. ¶ 9); the class is

26   represented by experienced counsel (*id*., ¶¶ 2-4); and the Parties exchanged a

27   significant amount of information both informally and through discovery so that

28   Plaintiffs and their counsel can make an informed recommendation about the

11

1   Settlement (*id.*, ¶ 11).  Thus, the Settlement is presumed to be fair.

2   In evaluating the fairness of a settlement, the district court can weigh a variety

3   of factors, including the strength of the plaintiffs' case; the risk, expense,

4   complexity, and likely duration of further litigation; the risk of maintaining class

5   action status throughout the trial; the amount offered in settlement; the extent of

6   discovery completed and the stage of the proceedings; the experience and views of

7   counsel; the presence of a governmental participant; and the reaction of the class

8   members to the proposed settlement.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

9   1026 (9th Cir. 1998).  The relative degree of importance to be attached to any

10   particular factor depends upon the circumstances of each case.  *Torrisi v. Tucson*

11   *Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).  Plaintiffs submit that the

12   pertinent factors warrant preliminary approval of the instant Settlement.

13        **A.**    **The Strength of Plaintiffs' Claims and the Risks and Expense of**
14              **Further Litigation**

15   Although Plaintiffs are confident in the substantive merit of the claims,

16   further litigation would entail a number of risks that counsel in favor of settlement.

17   Defendants have asserted defenses to the merits, including the argument that the

18   equipment used to dial the telephone calls at issue did not constitute an ATDS as

19   defined by the TCPA.[4]  On the other hand, Plaintiffs contend that the definition of

20   ATDS properly covers equipment that has the "capacity" to auto-dial, including by

21   addition of software, as well as predictive dialers, as the Federal Communications

22   Commission ("FCC") and the Ninth Circuit have held.  *Satterfield v. Simon &*

23   *Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009).  This issue is now pending before

24   the Court of Appeals for the D.C. Circuit in *ACA International*.  Absent a

25   _____

26   [4] 47 U.S.C. § 227(a)(1) defines ATDS as a device that uses a random or sequential
27   number generator to produce and store telephone numbers, and then calls those
numbers.

28

settlement, there would be a risk that a decision in *ACA International*, or a subsequent ruling by the FCC, could adversely affect Plaintiffs' TCPA claims.

Defendants would also assert defenses in opposition to a contested motion for class certification.  For example, Defendants have contended that issues of consent would make it difficult for Plaintiffs to obtain class certification in the first instance, or to maintain class certification through trial.  Zacks and Response North would argue that they did not purchase "leads" or dial numbers at random, but instead, each individual they called had previously provided their telephone number (either through the ZIR website or, as in the case of Kerr, in connection with a prior transaction).  Although Plaintiffs believe that they could overcome these arguments, there is risk that the Court could decline to certify a TCPA class in the context of a contested motion.  *See, e.g.*, *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 578 (S.D. Cal. Oct. 29, 2013) (Sammartino, J.) (denying class certification in TCPA case); *Gannon v. Network Tel. Servs., Inc.*, 2013 U.S. Dist. LEXIS 81250, at *3 (C.D. Cal. Jun. 5, 2013) (denying certification in TCPA case); *Franklin v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 13696 (S.D. Cal. Jan. 29, 2016).

Regarding the Privacy Act claim, Response North has argued (among other things) that it had a policy that customer service representatives should advise call participants that the call was being recorded, and that the telephone calls did not involve "confidential communications" within the meaning of Cal. Penal Code § 632(c).  In the call-recording context, at least two federal district courts have denied motions for class certification, and two panels of the California Court of Appeal have affirmed trial court orders denying class certification.  *See Quesada v. Bank of Am. Inv. Servs.*, 2013 U.S. Dist. LEXIS 32588 (N.D. Cal. Feb. 19, 2013); *Torres v. Nutrisystem, Inc.*, 2013 U.S. Dist. LEXIS 66444 (C.D. Cal. Apr. 8, 2013); *Hataishi v. First Am. Home Buyers Prot. Corp.*, 223 Cal. App. 4th 1454 (2014); *Kight v. CashCall, Inc.*, 231 Cal. App. 4th 112 (2014).  On the other hand, at least

13

1   one federal district court has granted class certification in a Privacy Act case. *See*

2   *Ades v. Omni Hotels Mgmt. Corp.*, 2014 U.S. Dist. LEXIS 129689 (C.D. Cal. Sept.

3   8, 2014).  There is no doubt that a motion for class certification of the Privacy Act

4   claim would be hotly contested and there could be no certainty about the outcome.

5       Apart from risks associated with class certification and trial, if the litigation

6   were to continue, the trial process itself and subsequent appeals would take years,

7   with very substantial expenditures of time and resources by the Parties and the

8   Court, and without any guarantee of recovery for class members.  The proposed

9   Settlement eliminates all litigation risks and ensures that the class members receive

10  some compensation for their claims on a timely basis.

11      **B.     The Settlement Amount**

12      The Settlement will result in monetary payments to all Participating Class

13  Members.  Deductions from the aggregate settlement amount will include attorneys'

14  fees, litigation expenses, class representative enhancements, and expenses of

15  settlement administration.  Although the exact amounts of those deductions are not

16  yet known, and the precise number of valid claims is not yet final, for purposes of a

17  rough preliminary estimate, each Participating Zacks Class Member could receive

18  approximately $115; each Participating Response North TCPA Class Member could

19  receive approximately $50; each Participating Response North Privacy Class

20  Member could receive approximately $160; and individuals who are members of

21  both Response North Class could receive approximately $210.  Class Counsel will

22  provide the Court with final figures and a precise breakdown in an update prior to

23  the final approval hearing.

24      While the foregoing figures are only preliminary estimates, they do show that

25  this settlement provides real value to class members.  In the motion for preliminary

26  approval (Dkt. No. 108-1), counsel cited to multiple TCPA cases in which district

27  courts approved settlements ranging from $0.25 to $2.90 per person on a gross basis.

28  *See* Dkt. No. 108-1 at 22-23.  That brief also cited to Privacy Act cases in which

1   settlement amounts were in the vicinity of $10 per person on a gross basis.  *Ibid*.  On

2   a post-claims basis, courts in this district have approved settlements resulting in per-

3   claimant payments of $13.75 (*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034,

4   1043 (S.D. Cal. May 27, 2015) and $40 (*Adams v. AllianceOne*, No. 08-cv-0248,

5   Dkt. No. 137 (S.D. Cal. Sept. 28, 2012)).  Thus, the per-person recovery in this case

6   compares favorably to other settlements.

7         **C.**     **The Extent of Discovery Completed and Stage of the Proceedings**

8        As summarized above in Section III.B, discovery in this action was extensive

9   and hard-fought.  Over the course of the litigation, Plaintiffs propounded four sets of

10  interrogatories (totaling 60 interrogatories) and eight sets of requests for production

11  (totaling 164 requests).  Dostart Decl. ¶ 11.  Defendants' written discovery included

12  four sets of interrogatories (totaling 68 interrogatories) and four sets of requests for

13  production (totaling 176 requests).  *Id*.  Document discovery involved the

14  production and review of tens of thousands of pages.  *Id*.  In addition to formal

15  discovery, the Parties also exchanged information informally during the mediation

16  process.  Thus, there is sufficient information to enable Plaintiffs and Class Counsel

17  to evaluate the case and enter into the proposed Settlement.  *Id*.

18        **D.**     **The Experience and Views of Counsel**

19       The law firm of Dostart Hannink & Coveney LLP (including its predecessor

20  firms) has been appointed as lead or co-lead class counsel in more than 50 certified

21  class actions.  Dostart Decl. ¶ 4.  The attorneys handling this action specialize in

22  class action litigation on behalf of consumers.  *Id*. ¶¶ 2-4.  Class Counsel believes

23  the settlement is fair, reasonable, and in the best interests of the class members.  *Id*.

24  ¶ 12.

25        **E.**     **The Presence of a Governmental Participant**

26       No governmental entity is a party to this litigation.  Pursuant to 28 U.S.C.

27  §1715, the U.S. Attorney General and the California Attorney General were notified

28  about the settlement on October 2, 2017 (the "CAFA notice").  *See* Dostart Decl.

¶ 14 and Ex. 1.  Other than one confirmation of receipt, no government agency has responded to the CAFA notice, and the 90-day period prescribed by 28 U.S.C. § 1715(d) has expired.  Dostart Decl. ¶ 14.

### F.     The Reaction of the Class to the Settlement

The "absence of a large number of objections to a proposed class action raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.  *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004), citing *In re Marine Midland Motor Vehicle Leasing Litig.*, 155 F.R.D. 416, 420 (W.D.N.Y. 1994).

Here, the reaction of the class has been overwhelmingly positive.   No objections were filed.  Moreover, only 19 class members timely opted out (Morales Decl. ¶16), which represents 0.006% of the individuals to whom individual notice was distributed.  By way of comparison, in *Sommers v. Abraham Lincoln Fed. Sav. & Loan Ass'n*, 79 F.R.D. 571 (E.D. Pa. 1978), the district court found that an opt-out rate of 4.25% (8,000 opt-outs out of 188,000 class members) was a factor that *supported* approval of the settlement.  *See also Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2003) (Ninth Circuit upheld the district court's approval of a settlement involving 90,000 class members, 500 opt-outs, and 45 objections).

The positive response of class members is also evident in the high claims rate. Many TCPA settlements result in a claims rate of 1-3%.   In *Couser*, the court praised the 7.7% claims rate as "high."  Here, the claims rate exceeds 10%.  This too weighs in favor of final approval.

### G.     There Was No Collusion

The settlement was not the product of collusion.   To the contrary, the settlement negotiations were at all times adversarial, non-collusive and conducted at arm's-length.  Dostart Decl. ¶¶ 5-11.

## VI.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court grant final approval to the settlement and direct the parties to proceed to implement the settlement in accordance with its terms.

Dated: March 9, 2018                    DOSTART HANNINK & COVENEY LLP


                                        /s/ Zachariah P. Dostart
                                        ZACHARIAH P. DOSTART
                                        Attorneys for Plaintiffs
                                        zdostart@sdlaw.com

840820.3