UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN KERR, EDWARD LI, TIM BARNARD, and KENNETH CURTIS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZACKS INVESTMENT RESEARCH, INC., an Illinois corporation, NATIONAL MARKETING RESOURCES, LLC, a Missouri limited liability company; PARADIGM DIRECT LLC, a Delaware limited liability company; RESPONSE NORTH, LLC, a Utah limited liability company; ZACKS INVESTMENT MANAGEMENT, INC. an Illinois corporation; and DOES 6-50, inclusive,<br><br>Defendants. | Case No.: 16-CV-01352 GPC BLM<br><br>**ORDER:**<br><br>**(1) GRANTING FINAL APPROVAL OF SETTLEMENT;**<br><br>**(2) GRANTING MOTION FOR AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND CLASS REPRESENTATIVE ENHANCEMENTS; AND**<br><br>**(3) ISSUING JUDGMENT**<br><br>**[DKT. NOS. 117 AND 118.]** |

Pending before the Court is Plaintiffs' Unopposed Motion for Final Approval of Settlement and (2) Plaintiffs' Motion for Award of Attorneys' Fees, Litigation Expenses, and Class Representative Enhancements. Dkt. Nos. 117, 118. These Motions relate to the

Settlement between plaintiffs John Kerr ("Kerr"), Edward Li ("Li"), Tim Barnard ("Barnard"), Kenneth Curtis ("Curtis"), (collectively, "Plaintiffs") and defendants Zacks Investment Management, Inc. ("ZIM") and Zacks Investment Research, Inc. ("ZIR") (together, "Zacks"); Response North, LLC ("Response North"); National Marketing Resources, LLC ("NMR"); and Paradigm Direct LLC ("Paradigm") (collectively, "Defendants").[1]  Dkt. No. 108.  A hearing was held as to this matter on April 6, 2018.

In December 2015, plaintiff Kerr saw a television commercial advertising a book entitled "How to Consistently beat the Market," published by Zacks Investment Research ("ZIR").  Kerr called the telephone number and ordered the book.  In February 2016, Kerr received a telephone call who said he was calling from Zacks and that there were other products and services that would assist in Kerr's understanding of the book.  Kerr's complaint alleged that ZIR or its agents placed telephone calls in violation of the TCPA, and recorded certain telephone calls in violation of California's Privacy Act.  Dkt. No. 1.

The initial complaint was filed on May 6, 2016 in San Diego County Superior Court.  Dkt. No. 1-2.  On June 3, 2016, this Class Action was removed to the Southern District of California.  Dkt. No. 1.  On September 25, 2017, Plaintiffs submitted a Motion for Preliminary Approval of Settlement that was not opposed by either party.  Dkt. No. 108.  This Court held a hearing on November 9, 2017, expressing concerns about the settlement and directed the parties to submit supplemental briefing.  Dkt. No. 108, 115.  On November 17, 2017, this Court granted Plaintiffs' Motion for Preliminary Approval of Settlement and set a final approval hearing date for April 6, 2018.  On February 8, 2018, Plaintiffs filed a Motion for Attorney Fees, Litigation Expenses, and Class Representative Enhancements.  Dkt. No. 117.  On March 9, 2018, Plaintiffs filed a Motion for Final Approval of Settlement.  Dkt. No. 118.  On April 5, 2018, Plaintiffs

---

[1] Capitalized terms, not defined herein, have the same meaning as in the Settlement Agreement (Dkt. No. 108-3).

filed Supplemental Declarations of Zachariah P. Dostart and Abel Morales in Support of Motion for Final Approval of Settlement. Dkt. Nos. 119-120.

## I.     MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs and Class Counsel negotiated a $5.48 million cash settlement to resolve the TCPA and California Privacy Act claims asserted in this action. The Settlement Administrator has received a total of 31,908 claims, with a claims rate of about 10.85%. 18 individuals requested exclusion from the settlement, for an opt-out rate of .006%. Zero objections were filed.

### A.     PROPOSED SETTLEMENT[2]

The proposed settlement applies to three different classes: (1) Zacks Class; (2) Response North TCPA Class; and (3) Response North Privacy Class as defined below:

The "Zacks Class" is defined as follows:
"All natural persons nationwide who, between and including May 6, 2012 and June 30, 2017, received a telephone call that was (1) made to their cellular telephone and (2) initiated by or on behalf of ZIR or ZIM using an automatic telephone dialing system. Excluded from the Zacks Class are all employees of defendants, all employees of defendants' counsel, all employees of plaintiffs' counsel, and judicial officers, their family members, and court staff assigned to the Lawsuit."

The "Response North TCPA Class" is defined as follows:
"All natural persons nationwide who received from Response North a telephone call reflected in contact databases produced by Response North, which (1) was placed as part of the Zacks Book Campaign and/or the Options Trading Campaign and (2) was received on a cellular telephone. Excluded from the Response North TCPA Class are all employees of Response North, all employees of Response North's counsel, all employees of plaintiffs' counsel, and judicial officers, their family members, and court staff assigned to the Lawsuit."

The "Response North Privacy Class" is defined as follows:
"All California residents who received from Response North a telephone call reflected in contact databases produced by Response North, which (1) was made on a telephone line that was subject to recording by Response North and (2) was received by the recipient in the State of California. Excluded from the Response North Privacy Class are all employees of Response North, all employees of

---

[2] The proposed settlement agreement ("Settlement") was previously filed with the Court in support of Plaintiff's Motion for Preliminary Approval. *See* Dkt. No. 108-3.

Response North's counsel, all employees of plaintiffs' counsel, and judicial officers, their family members, and court staff assigned to the Lawsuit."

The monetary consideration consists of $4,650,000 for the Zacks Class, and $830,000 for the Response North Classes. Settlement § IV.A-B. Following final court approval and entry of judgment, each participating member of the Zacks Class will receive a pro-rata share of the Zacks Net Settlement Amount. Settlement § VIII.B. The Response North Net Settlement Amount will be allocated between Response North TCPA and Response North Privacy Class Members according to a point system described in Section VIII.C of the Settlement. Each Participating Class Member will be mailed a check representing that person's settlement payment no later than forty-five days after the Effective Date of the Settlement. Settlement VIII.D. Any portion of the settlement amount not distributed to participating class members at the end of 120 days will be paid to a court approved *cy pres* recipient. *Id.* Provided that the Effective Date occurs, Plaintiffs and participating class members, in addition to class members who do not timely request exclusion shall be deemed to have released and discharged Defendants from any and all claims defined in the Settlement Agreement Section IX as "Released Claims." Settlement IX.A, IX.B, IX.C.

**B.   CLASS NOTICE AND CLAIMS ADMINISTRATION**

Following entry of the Preliminary Approval Order, on November 17, 2017, the Claims Administrator established an interest-bearing account to receive initial settlement deposits. Morales Decl. ¶ 3. The Claims Administrator received from counsel for Zacks Investment Research and Zachs Investment Management an Excel spreadsheet containing the names, addresses, telephone numbers, and emails of potential class members. Morales Decl. ¶ 3 The Claims Administrator identified a list of 293,968 records of which 266,705 related to the Zacks Class, 11,678 related to the Response North TCPA Class, 13,823 records related to the Response North Privacy Class, and 1,762 related to individuals who were members of both Response North Classes. Morales Decl. ¶ 4.

On December 18, 2017, the Claims Administrator disseminated via email summary class notices to all individuals for whom an email address was available. Morales Decl. ¶ 5. When Class Notices were returned as undeliverable, the Claims Administrator attempted to mail those notices to individuals' mailing addresses. If email addresses were unavailable, the Claims Administrator sent the appropriate summary class notice via U.S. mail. In addition to email and mailed notices, the Claims Administrator caused publication notice to be published three times in the Wall Street Journal on December 30, 2017, January 6, 2018, and January 13, 2018. Morales Decl. ¶ 7, Ex. 5. The Claims Administrator created and has maintained a case-specific website for the Claims Administrator and Class Counsel, which contains contact information for the Claims Administrator and Class Counsel, as well as links to important documents concerning the proposed settlement at kerrvzirsettlement.com. Morales Decl. ¶ 8. Pursuant to the Preliminary Approval Order, class members had until February 16, 2018 to submit Claim Forms to the Claim Administrator. Dkt. No. 116. After processing the Claims Forms received from potential class members, the Claims Administrator determined that 31,908 claims are valid.[3] Supplemental Morales Decl. ¶ 5. These include 27,568 claims as to the Zacks Class, 2,879 claims as to the Response North Privacy Class, 1,251 claims as to the Response North TCPA class, and 210 claims who were part of both the Response North classes. Supplemental Morales Decl. ¶ 14. The Claims Administrator received 18 timely and valid requests for exclusion, of which 16 were members of the Zacks Class and 2 were members of the Response North Privacy Class. Supplemental Morales Decl. ¶ 9.

C.     **LEGAL STANDARD FOR COURT APPROVAL**

The Ninth Circuit maintains a "strong" judicial policy favoring the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The

---

[3] This includes an assumption that 2,874 claims received between February 17, 2018 and March 9, 2018 be deemed timely. Supplemental Morales Decl. ¶ 3.

policy of the federal courts is to encourage settlement before trial. *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989). Federal Rule of Civil Procedure 23(e) first "require[s] the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

### 1.     Class Certification

Before approving a class action settlement, the Court must determine whether the proposed class can be certified. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). In the Preliminary Approval Order, this Court considered the requirements for class certification under Rule 23 and found that, for purposes of the settlement in this Action, the prerequisites for class certification are satisfied. *See* Dkt. No. 116 at 2-4. The Court hereby reaffirms those findings.

### 2.     Final Fairness Determination

The Court must make a determination of whether the class-action settlement is "fair, reasonable, and adequate" pursuant to Rule 23(e)(1)(C). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. The Court looks to several factors including: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class-action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. The parties' settlement agreement complies with these requirements.

#### a)     Strength of Plaintiff's Case and Risk of Further Litigation

Further litigation would have entailed significant risk for Plaintiffs. Defendants

asserted defenses including that the equipment used in this case to make telephone calls did not constitute an ATDS as defined by the TCPA, an issue that was to be decided by the D.C. Circuit in *ACA International v. FCC*. Absent a settlement, this decision could have adversely affected Plaintiffs' TCPA claims.

Defendants would have also asserted defenses to oppose class certification, including the argument that the "leads" were previously provided by individuals who had provided their telephone numbers through the ZIR website or through prior transactions. Thus, Plaintiffs faced the risk of failing to certify their classes. *See Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 578 (S.D. Cal. Oct. 29, 2013). Plaintiffs could have faced similar challenges in certifying a Response North Privacy Class in that Response North argued that it had a policy that representatives would advise participants that a call was being recorded and that the calls did not involve confidential communications. Such an argument could have led to a denial of class certification as well. *See, e.g., Quesada v. Bank of Am. Invs. Servs.*, 2013 U.S. Dist. LEXIS 32588 (N.D. Cal. Feb. 19, 2013). Moreover, absent a settlement the parties would have faced years of litigation with substantial expenditures of time and resources without a guarantee of recovery for class members. Accordingly, the strength of plaintiffs' case and the risk of further litigation weigh in favor of approval of this settlement.

**b) Amount of the Proposed Settlement**

The settlement amounts provide a strong monetary recovery for all participating class members. Each Participating Zacks Class Member will receive $111.95, each Participating Response North TCPA Class Member will receive $68.39, each Participating Response North Privacy Class Member will receive approximately $227.99, and individuals who are members of both classes will receive approximately $296.38. Supplemental Dostart Decl. ¶ 9.

These numbers show that the settlement provides real value to class members,

particularly in comparison to other TCPA and Privacy Act cases. *See Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1043 (S.D. Cal. May 27, 2015) ($13.75 per claimant post-claims payment approved).

### c) Extent of Discovery Completed and Stage of the Proceedings

Plaintiffs assert that discovery in this action was extensive and hard-fought. Plaintiffs' requests in discovery included: (1) four sets of interrogatories totaling sixty interrogatories; (2) eight sets of requests for production totaling 164 requests. Defendants requested (1) four sets of interrogatories totaling sixty eight interrogatories; (2) four sets of requests for production totaling 176 requests. This process involved the production and review of tens of thousands of pages of documents, and included informal exchanges during the mediation process. Dostart Decl. ¶ 11.

Given the extent of discovery, the Court concludes that there was sufficient information available to enable the Parties to adequately evaluate their case and that this factor weighs in favor of approval of the Settlement.

### d) Experience and Views of Class Counsel

Dostart Hannick & Coveney LLP has been appointed lead or co-lead counsel in more than 50 certified class actions. Dostart Decl. ¶ 4. The attorneys handling this issue specialize in class action litigation and the firm focuses on class action litigation on behalf of consumers. Dostart Decl. ¶¶ 2-4. Class Counsel also declares in their opinion that the settlement is "fair, reasonable, and in the best interests of class members." Dostart Decl. ¶ 12. Giving the appropriate weight to class counsel's recommendation, the Court concludes that this factor weighs in favor of approval. *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

### e) Presence of a Government Recipient

No governmental entity is a party to this litigation and the U.S. Attorney General

and California Attorney General were provided a CAFA notice regarding the settlement on October 2, 2017. Dostart Decl. ¶ 13, Ex. 1. No governmental agency has responded. Accordingly, this factor is not relevant to the approval of this settlement.

### f) Reaction of the Class to the Settlement

The "absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). Here, *no* objections have been filed and only 19 class members timely opted out, representing an opt-out rate of .006%. Morales Decl. ¶ 16; *DIRECTV*, 221 F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement."). Moreover, the high claims rate of 10.85% weighs in strong favor of final approval. *See Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1043-44 (S.D. Cal. May, 27, 2015) (describing 7.7% claims rate as a higher than average claims rate and approving a "low end" $13.75 TCPA recovery because of the high claims rate).

Accordingly, the reaction of the class to the settlement—including no objections, minimal opt-outs, and a high claim rate—weighs heavily in favor of final approval.

### g) Conclusion

Based on the foregoing, the Court concludes the proposed settlement is fair, reasonable, and adequate. There are no objections to the settlement, and there is no evidence the settlement resulted from collusion between the parties. *See* Dostart Decl. ¶¶ 5-11. Rather, Counsel's declaration indicates the settlement negotiations were at all times adversarial, non-collusive, and conducted at arms-length. Accordingly, the settlement is approved.

## II. MOTION FOR AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND CLASS REPRESENTATIVE ENHANCEMENTS

On February 8, 2018, Plaintiffs' filed a motion for award of attorneys' fees, litigation expenses, and class representative enhancements. Dkt. No. 117.

### A. Attorneys' Fees

Class counsel requests a fee award of 25% of the settlement fund, which equals to $1,370,000.

Under the common fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1175 (S.D. Cal. 2007) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003)). Where, as here, the parties establish a common fund to settle a class action, courts have discretion to choose either the "percentage" method or the "lodestar/multiplier" method to determine a reasonable attorneys' fee. *See Hanlon v. Chrysler Group*, 150 F. 3d 1011, 1029 (9th Cir. 1998); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997). The Ninth Circuit has held that, regardless of whether a court "applies the lodestar or the percentage method, 'we require only that fee awards in common fund cases be reasonable under the circumstances.'" *Id.* (*quoting Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990)) (emphasis in original); *see Staton*, 327 F.3d at 963.

Under the percentage method, Plaintiffs' request for attorneys' fees in the amount of twenty-five percent of the Settlement Funds is in line with this Circuit's benchmark amount. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). The results achieved by class counsel represent a strong recovery for the class in that each member of the Zack Class will receive $111.95, each member of the Response North TCPA class will receive $68.39, each member of the Response North Privacy

Class will receive $227.99, and members of both Response North classes will receive $296.38. These results compare favorably to other similar settlements. *See Kramer v. Autobytel, Inc.*, 2012 US. Dist. LEXIS 185800, at *2, 13 (N.D. Cal. Jan. 27, 2012) (final approval of $12.2 million settlement for class with 47 million individuals); *Malta v. Fed. Home Loan Mortg. Corp.*, 2013 U.S. Dist. LEXIS 15731, at *11, *30 (S.D. Cal. Feb. 5, 2013) (preliminary approval of $17.1 million settlement for class consisting of 5,887,508 members or $2.90 per class member). Moreover, there was substantial risks of litigation including the Defendants' contention that dialing equipment should not be classified as an "automatic telephone dialing system" and that Plaintiffs would not be able to establish a lack of consent. Defendants raised arguments under *Wal-Mart Stores, Inc v. Dukes*, 131 S. Ct. 2541, 2551 (2011), regarding whether Plaintiffs would lose a contested class certification motion.

The Court next looks at the skill required and quality of work. Defendants are represented by prominent law firms with significant complex litigation experience, and this action involved extensive discovery and motion practice, thus demonstrating Class Counsel's favorable settlement despite this opposition. *See In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977 (recognizing the importance of evaluating plaintiffs' attorneys in light of quality of opposing counsel). Moreover, the contingent nature of the fee in this case justifies a benchmark 25% award. *See In re WPPSS*, 19 F.3d at 1299-30. Finally, awards in similar cases have awarded attorneys' fees in the benchmark range. *See Barani v. Wells Fargo Bank, N.A.*, No. 3:12-cv-02999 (S.D. Cal. Dec. 18, 2012); *Stemple v. QC Holdings, Inc.*, No. 3:12-cv-01997 (S.D. Cal. Aug. 13, 2012); *Mcdonald v. Bass Pro Outdoor World, LLC*, No. 13-cv-889-BAS-DHB (S.D. Cal. Dec. 18, 2014). Accordingly, a 25% benchmark fee is justified under the percentage method.

Under the lodestar method, Plaintiffs' request for attorneys' fees is also reasonable. To date, Class Counsel has incurred approximately $979,577.50 in hourly fees. Dostart Decl. ¶ 23. Dividing the requested fee of $1,370,000 by that amount yields a multiplier of 1.4, which is *below* that which is commonly approved by other courts. *See Couser v. Comenity Bank*, 125 F. Supp. 3d. 1034, 1049 (S.D. Cal. 2015) (2.8 multiplier); *Adams v. AllianceOne, Inc.*, No. 3:08-cv-0248-JAH-WVG (S.D. Cal. Sept. 28, 2012) (3.81 multiplier). Accordingly, the lodestar cross-check also supports an award of benchmark attorneys' fees.

Pertinently, no class members have objected to Plaintiffs' fee request, disclosed in the settlement notice sent to Class Members. Moreover, Plaintiffs' counsel specifically filed their motion for fees in advance of the February 16, 2018 objection deadline to allow class members an opportunity to review their fee requests, a practice that conforms to the standard set forth in *Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988, 994-95 (9th Cir. 2010).

Accordingly, the Court will **GRANT** Plaintiffs' request for $1,370,000 in attorneys' fees, as these fees are reasonable under both the percentage method and lodestar method.

B.    **Reimbursement of Litigation Expenses**

Class Counsel seeks reimbursement of $50,166.79 for expenses in the following categories: (a) copy charges; (b) deposition expenses; (c) filing, service and messenger fees; (d) postage and express mail; (e) professional fees (mediation and consultant fees); (f) research; (g) travel. Professional fees included mediation fees for two full-day mediations with retired Magistrate Judge Papas. Dkt. No. 117 at 15. In a common fund settlement, class counsel is entitled to recover reasonable expenses incurred in prosecuting the litigation. *In re Immune Responsive Securities Litigation*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007).

12

16-CV-01352 GPC BLM

The Court finds the expenses to be reasonable and necessary. Filing fees, copy fees, and postage are necessary expenses of litigation. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1368 (N.D. Cal. 1996). Messenger fees are also recoverable as costs. *Immune Response*, 497 F. Supp. 2d. at 1177. Costs regarding deposition transcripts have been found to be reimbursable expenses. *Arredondo v. Delano Farms Co.*, No. 1:09-CV-01247-MJS, 2017 WL 4340204, at *8 (E.D. Cal. Sept. 29, 2017). Computerized legal research is an essential modern tool of a modern efficient law office and constitutes a reimbursable expense. *See Robinson v. Ariyoshi*, 703 F. Supp. 1412, 1436 (D. Haw. 1989). Mediation fees are a reimbursable expenses in common fund cases. *Immune Responsive*, 497 F. Supp. 2d. at 1177 (citing *Lenahan v. Sears, Roebuck and Co.*, 2006 WL 2085282, *22 (D. N.J. 2006); *Yong Soon Oh v. AT & T Corp.*, 225 F.R.D. 142, 154 (D. N.J. 2004); *Carrabba v. Randalls Food Markets, Inc.*, 191 F.Supp.2d 815, 834 (N.D. Tex. 2002)). Reimbursement for travel expenses it within the broad discretion of the court. *See In re Immune Response Securities Litigation*, 497 F. Supp. 2d at 1177 (citing *Media Vision*, 913 F. Supp. at 1369)). Investigative consulting services have been found to be reimburseable costs. *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1367 (N.D. Cal. 1996). The Court will take note that attorney Zach P. Dostart has attested that these expenses were reasonably incurred during the prosecution of this class action. Dostart Decl. ¶ 28-29.

Accordingly, the Court will **GRANT** counsel's request for reimbursement expenses in the amount of $50,166.79.

C. **Class Representative Enhancements**

Plaintiffs seek incentive awards for each Class Representative. Plaintiffs seek the following incentives for each plaintiff: Kerr ($10,000); Li ($4,500), Barnard ($4,500), Curtis ($4,500), Johnson ($2,000), Abjanic ($2,000), Cares ($2,000). Incentive awards are designed to "compensate class representatives for work done on behalf of the class, to make

up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. "Incentive awards are fairly typical in class action cases," but are ultimately "discretionary." *Id.* at 958.

In deciding whether to approve an incentive award, courts consider factors including:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). The district court must evaluate incentive awards individually. *See Staton*, 327 F.3d at 977.

Plaintiffs assert that each Class Representative expended significant amounts of time and effort to represent the interest of Class Members. Plaintiffs detail each Class Representative's specific contributions, as follows:

### a) Kerr

Plaintiffs seek a $10,000 Class Representative award for John Kerr, who has worked in the financial services industry for over 34 years and is currently a Senior Vice President of Wealth Management with UBS Financial Services Inc. Dostart Decl. ¶ 31. Kerr consulted with Class Counsel at the onset of this matter and commenced the litigation. *Id.* Kerr responded to interrogatories and requests for production served by ZIR and assisted Class Counsel in evaluating information provided by defendants in response to discovery. Plaintiffs assert that Kerr has communicated with Class Counsel on a regular basis. *Id.*

### b) Li, Barnard, and Curtis

Plaintiffs Li, Barnard, and Curtis were added as named Plaintiffs in October 2016 upon the filing of the Second Amended Complaint. Dostart Decl. ¶ 32. Each responded to

interrogatories and requests for production of documents served by ZIR in May 2017 and have communicated with Class Counsel on a regular basis. Dostart Decl. ¶ 32.

### c) Johnson, Abjanic, and Cares

Plaintiffs Johnson, Abjanic, and Cares were formally added as named plaintiffs in September 2017 upon the filing of the Third Amended Complaint. Dostart Decl. ¶ 33.[4] Yet, they contributed significantly to the resolution of the action as Class Counsel identified these three individuals as potential additional named plaintiffs after two in-person mediation sessions had failed to lead to a settlement. *Id.* Their willingness to participate demonstrated to defense counsel that despite challenges as to then-existing plaintiffs, there were additional individuals willing and able to pursue the action. *Id.* Attorney Dostart asserts his belief that the addition of Johnson, Abjanic, and Cares gave "additional impetus to the settlement discussions." *Id.*

The Court concludes that the requested class representative enhancements are reasonable and in line with awards in other cases. Significantly, there is no opposition to any of the requested enhancement awards by other class members. Kerr, Li, Barnard, and Curtis, appear to have provided significant roles in the litigation by reviewing documents, responding to discovery, and remaining in communication with counsel. The additional plaintiffs Johnson, Abjanic, and Cares appear to have played an important role in settlement negotiations by demonstrating the willingness of other plaintiffs to continue the litigation in light of potential problems with the other named plaintiffs. Plaintiffs' efforts appear to have resulted in a significant settlement for class members.

In light of the requests, the Court finds that the class representative enhancements are reasonable and in line with enhancements awarded in other cases. *See Mcdonald v.*

---

[4] Plaintiffs initially sought to add Johnson, Abjanic, and Cares as named plaintiffs on July 12, 2017, but that filing was stricken on a procedural basis. All parties understood during settlement negotiations that Johnson, Abjanic, and Cares would be added as named plaintiffs. Dostart Decl. ¶ 33.

*Bass Pro Shops*, 13-cv-889-BAS-DHB (S.D. Cal. Dec. 18, 2014) ($20,000 enhancement in $6,000,000 settlement). *See Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, at *25 (S.D. Cal. June 1, 2010) ($25,000 incentive award in case with settlement fund of $548,775.00); *In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-2509-LHK, 2014 U.S. Dist. LEXIS 184827, at *16 (N.D. Cal. May 16, 2014) (approving five service awards totaling $100,000 in a $20,000,000 settlement). Accordingly, the Court will **GRANT** Plaintiffs' requests for class representative enhancements.

## CONCLUSION

For the foregoing reasons, it is **HEREBY ORDERED**:

1. The Court has subject matter jurisdiction over the Action and personal jurisdiction over all settling parties.

2. All defined terms in this Final Approval Order shall have the same meanings as in the Settlement Agreement.

3. All preliminary findings and conclusions in the Court's Preliminary Approval Order are hereby made final.

4. The Court reaffirms certification of the following three classes:

The "Zacks Class" is defined as follows:
"All natural persons nationwide who, between and including May 6, 2012 and June 30, 2017, received a telephone call that was (1) made to their cellular telephone and (2) initiated by or on behalf of ZIR or ZIM using an automatic telephone dialing system. Excluded from the Zacks Class are all employees of defendants, all employees of defendants' counsel, all employees of plaintiffs' counsel, and judicial officers, their family members, and court staff assigned to the Lawsuit."

The "Response North TCPA Class" is defined as follows:
"All natural persons nationwide who received from Response North a telephone call reflected in contact databases produced by Response North, which (1) was placed as part of the Zacks Book Campaign and/or the Options Trading Campaign and (2) was received on a cellular telephone. Excluded from the Response North TCPA Class are all employees of Response North, all employees of Response North's counsel, all employees of plaintiffs' counsel, and judicial officers, their family members, and court staff assigned to the Lawsuit."

The "Response North Privacy Class" is defined as follows:
"All California residents who received from Response North a telephone call reflected in contact databases produced by Response North, which (1) was made on a telephone line that was subject to recording by Response North and (2) was received by the recipient in the State of California.  Excluded from the Response North Privacy Class are all employees of Response North, all employees of Response North's counsel, all employees of plaintiffs' counsel, and judicial officers, their family members, and court staff assigned to the Lawsuit."

5. The Court reaffirms its finding that the Classes meet the requirements for certification under Fed. R. Civ. P. 23(a) and 23(b)(3).  Plaintiffs and Class Counsel have fairly and adequately protected the interests of the Class Members

6. The Court finds that notice of the Settlement was properly disseminated to Class Members via e-mail, mail, and publication in accordance with the Preliminary Approval Order.  The Court further finds that the notice procedure implemented in this Action provides for the best notice practicable under the circumstances, and that such notice procedure satisfies Fed. R. Civ. P. 23(c)(2)(B) and the requirements of due process.

7. The Court finds that, having been properly notified of the Settlement, no Class Member has objected to any aspect of the Settlement, including the proposed award of attorneys' fees, litigation expenses, and enhancements to the named plaintiffs/class representatives.

8. The Court finds that 18 individuals submitted timely and valid requests for exclusion from the Settlement.  Those 18 individuals are listed on Appendix A hereto.  Those 18 individuals are excluded from the Settlement, will not participate in the Settlement, and will not be bound by the Settlement's release.

9. The Court finds that the CAFA notice required by 28 U.S.C. § 1715 was served on October 2, 2017 on the United States Attorney General and the appropriate State officials.  This Final Approval Order is being entered more than 90 days after the CAFA notice was served.

10.     The Court grants the motion for final approval of the Settlement. After considering all pertinent factors, the Court finds that the Settlement is fair, reasonable, and in the best interests of the Class Members. In evaluating the Settlement, the Court has considered the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; and the reaction of Class Members to the Settlement. The Court finds that the Settlement has been reached as a result of intensive, serious, and non-collusive arm's-length negotiations.

11.     The Court grants Class Counsel's motion for an award of attorneys' fees in the amount of $1,370,000, plus reimbursement of litigation expenses in the amount of $50,166.79, all of which shall be paid proportionally from the Zacks Monetary Consideration and the Response North Monetary Consideration. The Court finds that the attorneys' fees are justified as a percentage of the class recovery under the common fund doctrine, and under the lodestar/multiplier approach.

12.     The Court grants the request for service payment enhancements to the named plaintiffs and class representatives as follows:  $10,000 to John Kerr; $4,500 each to Edward Li, Tim Barnard, and Kenneth Curtis; and $2,000 each to Lia Johnson, John Abjanic, and Arnold Cares. The Court finds that the foregoing payments are justified in light of the benefit conferred, the time spent, and the risk that the respective plaintiffs/class representatives undertook in representing the interests of the Class Members.

13.     The parties are ordered to carry out the Settlement in the manner provided in the Settlement Agreement.

14. The Settlement Administrator shall proceed with distribution to the Participating Class Members, in accordance with the Settlement Agreement.

# JUDGMENT

15. This Action is terminated with prejudice.

16. Plaintiffs and all Class Members who have not timely requested exclusion from the Settlement, as well as their respective assigns, executors, administrators, successors and agents, have released, resolved, relinquished, and discharged each and all of the Released Parties from each of the Released Claims, as set forth in Section IX of the Settlement Agreement.

17. Without affecting the finality of this Judgment, the Court hereby retains continuing jurisdiction over the parties and the Class Members to effectuate and ensure compliance with the Settlement Agreement and this Order.

**IT IS SO ORDERED.**

Dated: April 9, 2018

Hon. Gonzalo P. Curiel
United States District Judge

# APPENDIX A

*Kerr, et al. v. Zacks Investment Research, Inc., et al.*

No. 16-CV-01352 GPC BLM

The following individuals are excluded from the Settlement:

| | Name | Class |
|---|---|---|
| 1. | Blake Carlin | Zacks Class |
| 2. | Garrett Davis | Zacks Class |
| 3. | Robert Englmeier | Zacks Class |
| 4. | Scott Grilley | Zacks Class |
| 5. | Gizella Halmagian | Zacks Class |
| 6. | Henry Hays | Zacks Class |
| 7. | Christopher Jones | Zacks Class |
| 8. | Kevin Kangas | Zacks Class |
| 9. | Phil Martino | Zacks Class |
| 10. | Pam Medellin | Zacks Class |
| 11. | George Pappas | Zacks Class |
| 12. | Jim Roginski | Zacks Class |
| 13. | Charles Simon | Zacks Class |
| 14. | Linh Tran | Zacks Class |
| 15. | Shirley Wallace | Zacks Class |
| 16. | Jon Yun | Zacks Class |
| 17. | Darleen Haynes | Response North Privacy Class |
| 18. | Rebecca Torrence | Response North Privacy Class |